SHARTSIS FRIESE LLP
MARY JO SHARTSIS (Bar #55194)
AMY L. HESPENHEIDE (Bar #200930)
One Maritime Plaza, 18th Floor
San Francisco, California  94111-3598
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922
Emails:   mjshartsis@sflaw.com
          ahespenheide@sflaw.com

Attorneys for Appellant
A. C. SPICER, TRUSTEE IN BANKRUPTCY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE:

GIUSEPPE ENZO CECCONI,

              Debtor.

SARAH CECCONI,

              Plaintiff,

     v.

GIUSEPPE ENZO CECCONI and A. C.
SPICER, TRUSTEE IN BANKRUPTCY,

              Defendants.

A.C. SPICER, TRUSTEE IN
BANKRUPTCY,

              Appellant,

     v.

SARAH CECCONI,

              Appellee.

Case No. 5:07-cv-06194-JW

**APPELLANT'S BRIEF**

**(MONETARY SANCTIONS APPEAL)**

**The Honorable James Ware**

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF BASIS OF APPELLATE JURISDICTION..........................2

III.   STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW.................2

       A.    Issues Presented on Appeal ....................................................2

       B.    Standard of Review ................................................................3

IV.    STATEMENT OF THE CASE .............................................................4

       A.    Procedural Background ..........................................................4

       B.    Factual Background ..............................................................5

             1.    Testimony regarding Sarah Cecconi's response to Trustee's
                   document requests ........................................................5

             2.    Testimony regarding the discovery practices of counsel for Sarah
                   Cecconi ........................................................................7

             3.    Documents produced by Sarah Cecconi only just before or during
                   trial or not produced at all............................................8

             4.    Testimony regarding Sarah Cecconi's application of liquid white-
                   out to documents ........................................................9

V.     ARGUMENT .................................................................................10

       A.    The Bankruptcy Court's Very Limited Sanctions Award Was Based on
             Clearly Erroneous Factual Findings................................................11

       B.    The Bankruptcy Court Improperly Placed on Trustee the Burden to Prove
             That Sarah Cecconi Had Examined Documents and Deliberately Chosen to
             Withhold Them .....................................................................12

       C.    Trustee Was Unavoidably Prejudiced by Sarah Cecconi's "Blatant"
             Spoliation of Evidence. ............................................................14

       D.    An Award of All Fees and Costs Incurred by Trustee at Trial of This
             Matter Would Be Fair and Appropriate ..........................................15

VI.    CONCLUSION .............................................................................17

SHARTSIS   FRIESE   LLP
ONE MARITI  ME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2nd Cir. 2001) .................................................................................14

*Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*,
77 F.3d 278 (9th Cir. 1996) ..................................................................................15

*Catlin v. United States*,
324 U.S. 229 (1945) ...............................................................................................2

*Chambers v. NASCO*,
501 U.S. 32 (1991) ...................................................................................... 3, 15, 16

*Easley v. Cromartie*,
532 U.S. 234 (2001) ...............................................................................................3

*In re Aheong*,
276 B.R. 233 and n8 (9th Cir. B.A.P. 2002) .........................................................2

*In re Frontier Properties, Inc.*,
979 F.2d 1358 (9th Cir. 1992) ...............................................................................2

*In re Lawson*,
122 F.3d 1237 (9th Cir. 1997) ...............................................................................3

*In re Lopez*,
192 B.R. 539 (9th Cir. B.A.P. 1996).....................................................................11

*In re Napster, Inc. Copyright Litigation*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006).......................................................... 15, 16

*In re Pena*,
155 F.3d 1108 (9th Cir. 1998) ...............................................................................3

*In re Rifino*,
245 F.3d 1083 (9th Cir. 2001) ...............................................................................3

*Link v. Wabash R. Co.*,
370 U.S. 626 (1962) ...............................................................................................3

*Thomson McKinnon Secur., Inc. v. Salter*,
873 F.2d 1397 (11th Cir. 1989) .............................................................................2

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948) ...............................................................................................3

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9  4111

# TABLE OF AUTHORITIES
### (continued)

Page(s)

## Statutes

9 United States Code
§ 15...................................................................................................................2

28 United States Code
§ 1291.................................................................................................................2
§ 158(a)(1) .........................................................................................................2

## Rules

Federal Rules of Bankruptcy Procedure
Rule 8001...........................................................................................................2

## Other Authorities

Black's Law Dictionary
8th ed. 2004 .....................................................................................................14

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9  4111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9 4111

## I.    INTRODUCTION

This appeal is related to the appeal pending before this Court in Case No. 5:07-cv-03636-JW.    Appellant A. C. Spicer, Trustee in Bankruptcy in the bankruptcy proceedings instituted against Debtor Giuseppe Enzo Cecconi in the High Court of Bankruptcy in England ("Trustee"), hereby requests that the two appeals be consolidated and considered together.   The first appeal addresses the decision of the Bankruptcy Court on the merits of the entire case, including the issue of evidentiary sanctions requested by Trustee based on Sarah Cecconi's discovery abuses.   The instant appeal addresses only the issue of monetary sanctions, and specifically focuses on the Bankruptcy Court's decision not to award Trustee the full amount of attorneys' fees incurred at trial after having concluded that Sarah Cecconi's misconduct merited neither the dismissal sanction nor the adverse inference sanction requested by Trustee. These two appeals could not be filed at the same time because the Bankruptcy Court retained jurisdiction to determine the amount of monetary sanctions to be awarded Trustee and issued its decision several months after its Memorandum Decision After Trial ("Memorandum Decision") and corresponding Judgment.

Trustee requested evidentiary sanctions based on Sarah Cecconi's alteration of evidence by the application of liquid white-out and her other discovery abuses, including her failure to conduct any search for documents responsive to Trustee's document request.   As argued in the appeal of the Judgment, Trustee contends that the Bankruptcy Court's denial of his request for terminating sanctions or in the alternative, an adverse inference sanction, was clearly erroneous. Trustee further contends that the Bankruptcy Court's decision to award only partial monetary sanctions was similarly clearly erroneous.   The Bankruptcy Court elected to award only limited monetary sanctions in the form of attorneys' fees specifically incurred by Trustee in responding to Sarah Cecconi's spoliation of evidence, declined to award any sanctions based on Sarah Cecconi's other discovery misconduct and denied Trustee's request for an award of monetary sanctions in an amount equal to the total fees and costs incurred by Trustee at trial.   The Bankruptcy Court's decision based on clearly erroneous factual findings was an abuse of discretion and should be reversed.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9   4111

## II.    STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. section 158(a)(1).  Because the Memorandum Decision and corresponding Judgment constituted final rulings on Trustee's request for terminating sanctions—or in the alternative, an adverse inference sanction—the denial of those requests for sanctions was immediately appealable.  Fed. R. Bankr. P. 8001; 28 U.S.C. § 158(a)(1).  *See also In re Frontier Properties, Inc.*, 979 F.2d 1358, 1363 (9th Cir. 1992) (approving use of "pragmatic approach" to question of finality in bankruptcy cases and indicating that bankruptcy order is appealable where it resolves and seriously affects substantive rights and finally determines a discrete issue addressed); *Catlin v. United States*, 324 U.S. 229, 233 (1945) (decision which ends the litigation between the parties on the merits and leaves nothing for court to do but execute judgment is final).[1]

When Trustee appealed the Judgment, the Bankruptcy Court had not yet issued a final decision as to the amount of monetary sanctions to be awarded to Trustee.  Following entry of Judgment, the Bankruptcy Court properly retained jurisdiction as to the amount of monetary sanctions to be awarded.  *See In re Aheong*, 276 B.R. 233, 239-40 and n8 (9th Cir. B.A.P. 2002).  The Bankruptcy Court issued its Memorandum Decision re Request for Monetary Sanctions on October 16, 2007 and a corresponding Order on November 16, 2007.  Since that Order is now final, this Court has appellate jurisdiction pursuant to section 158(a)(1) as to Trustee's appeal of that Order.

## III.    STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

### A.    Issues Presented on Appeal.

The following issues are presented on this appeal:

1.    Whether the Bankruptcy Court's findings and conclusions that terminating or adverse inference sanctions were not warranted by the facts or law in this case are supported by the evidence and applicable law and whether denial of such sanctions was an abuse of discretion

---

[1]    *Catlin v. United States* was superseded by federal statute with respect to certain arbitration matters not pertinent here. *See Thomson McKinnon Secur., Inc. v. Salter*, 873 F.2d 1397, 1398-99 (11th Cir. 1989) (under 9 U.S.C. § 15 some orders granting or denying motions to compel arbitration are appealable even if not final within the meaning of 28 U.S.C. § 1291).

or clearly erroneous. Appellant contends this issue is already properly pending before the United States District Court for the Northern District of California in Case No. 5:07-cv-03636-JW, but appellee contends that the appeal of terminating or adverse inference sanctions was premature. Appellant and appellee have stipulated that this issue has been fully briefed in the earlier appeal of the Judgment entered on July 2, 2007.

2.     Whether the Bankruptcy Court's denial of Trustee's alternative request for monetary sanctions in an amount equal to all attorneys' fees and costs incurred by Trustee in connection with the trial of this action was an abuse of discretion or clearly erroneous in light of the undisputed facts before the Bankruptcy Court.

3.     Whether the Bankruptcy Court's denial of monetary sanctions for Sarah Cecconi's failure to conduct a reasonable search for documents requested during discovery and her failure to produce before trial responsive documents she then offered at trial was an abuse of discretion or clearly erroneous in light of the undisputed facts before the Bankruptcy Court.

**B.     Standard of Review.**

Questions of law are reviewed de novo and findings of fact for clear error. *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997); *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001); *In re Pena*, 155 F.3d 1108, 1110 (9th Cir. 1998); *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). An award of sanctions made pursuant to the Bankruptcy Court's inherent power is reviewed for abuse of discretion. *Chambers v. NASCO*, 501 U.S. 32, 55 (1991); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962). Here, appellant and appellee agree that Issue 1 has been fully briefed in the earlier appeal of the Judgment entered on July 2, 2007. Issues 2 and 3 are reviewed for clear error as to factual findings underlying the sanctions decision and for abuse of discretion as to the amount of monetary sanctions awarded.

//

//

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9  4111

## IV.    STATEMENT OF THE CASE

### A.    Procedural Background.

Trustee commenced an ancillary proceeding in the Bankruptcy Court to recover for the benefit of Enzo Cecconi's creditors a 4.52 acre parcel of real property in Pebble Beach, California ("Pebble Beach Property") to which Enzo Cecconi and his wife, Sarah Cecconi, hold record title as community property.  Sarah Cecconi intervened and commenced this adversary proceeding seeking a declaration that the Pebble Beach Property is her sole and separate property.  Judgment was entered in Sarah Cecconi's favor on July 2, 2007, and Trustee's appeal of that Judgment is pending before The Honorable James Ware in Case No. 5:07-cv-03636-JW.

In its Memorandum Decision, the Bankruptcy Court denied terminating sanctions and adverse inference sanctions sought by Trustee for Sarah Cecconi's alteration of numerous documents by the application of liquid white-out to conceal her husband's name and other information and for other serious discovery abuses, including her failure to search for responsive documents in discovery.  Memorandum Decision at 37 and 40.[2]  Instead, the Bankruptcy Court concluded that an award of monetary sanctions would be sufficient.  *Id.* at 42.  The Bankruptcy Court declined to award Trustee the full costs of trial and instead ordered Trustee to submit a request for attorneys' fees limited to the fees incurred for specific enumerated tasks made necessary by the application of the liquid white-out.  *Id.* at 43-44 and 84.  *Id.* at 44.  Trustee complied with this order, submitting detailed records as to the attorneys' fees he had incurred in connection with the tasks specifically enumerated by the Bankruptcy Court.  Sarah Cecconi objected; Trustee replied; and on June 7, 2007, the Bankruptcy Court heard arguments from both

---

[2]    Trustee's motion for evidentiary sanctions (Clerk's Record 138) was filed prior to trial and argued the first day of trial.  The Bankruptcy Court carried the motion through trial and the sanctions question was extensively briefed by both sides post-trial.  After argument on the motion for evidentiary sanctions, the Bankruptcy Court stated that the motion would be carried with the case and suggested the possibility that Sara Cecconi would be ordered to pay all or part of Trustee's attorneys' fees from the commencement of the adversary proceeding through trial and the post-trial briefing.  TT 15:10-23.  In response to questioning from the Bankruptcy Court during closing argument, Trustee had also suggested that were the Bankruptcy Court to determine not to award either type of evidentiary sanction Trustee had requested, it would be appropriate to require Sarah Cecconi to pay the total costs of trial incurred by Trustee.  Transcript of Closing Argument (Clerk's Record 197) at 105-107.  *See also* Supplemental Post-Trial Brief (Clerk's Record 200) at 30-32.

sides on Trustee's request for attorneys' fees associated with the tasks the Bankruptcy Court had expressly delineated.  The Bankruptcy Court issued its Memorandum Decision re Request for Monetary Sanctions on October 16, 2007, and entered an Order Awarding Monetary Sanctions Against Plaintiff Sarah Cecconi on November 16, 2007.  Spicer appeals the Order as an insufficient sanction under the facts of this case.

### B.    Factual Background.

Trustee respectfully refers the Court to the Statement of the Case and the Factual Background presented in Appellant's Brief filed on September 4, 2007 in Case No. 5:07-cv-03636-JW, at pages 5 through 21, for the broader factual background relevant to both these appeals.  Trustee will highlight in this brief several of the more significant facts relevant to the specific sanctions issue that emerged immediately prior to and during trial.

### 1.    Testimony regarding Sarah Cecconi's response to Trustee's document requests.

At trial, testimony from Sarah Cecconi, and Carla Korb ("Ms. Korb"), demonstrated that the only review of documents ever conducted on behalf of Sarah Cecconi was performed by Ms. Korb months before Trustee served document requests on Sarah Cecconi.  Exh. DG; TT 1733:25-1734:10;  TT 1918:3-16;  TT 1668:13-1669:3;  TT 1747:10-1748:4;  TT 1913:19-1915:3; TT 1928:7-15; TT 867:21-868:2.  The search for relevant documents undertaken by Ms. Korb at the request of Sarah Cecconi, and made at the behest of her counsel, was performed for the purpose of finding documents that would support Sarah Cecconi's case.  TT 2259:15-2260:4.  Sarah Cecconi asked Ms. Korb to come out to California in or before January 2003 to look through the boxes of documents.  Ms. Korb had previously sent from Sarah Cecconi's father's business office in Palm Beach, Florida, for documents "tracing use of Sarah's separate property funds."  Exh. BY ¶ 39; TT 867:21-868:2.  Ms. Korb had been secretary to Sarah Cecconi's father, who lived in Palm Beach, Florida, and also acted as secretary for Sarah Cecconi until her father's death in late 1997.  Exh. BX ¶¶ 5-6; Exh. BY ¶¶ 1-6, 10.

Sarah Cecconi testified on direct examination that she had never seen Trustee's request for production of documents served in April 2003:  "Q [Mr. Avilla]:  Okay.  At any point in the

SHARTSIS  FRIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9  4111

process of collecting documents for this case, did you see a list of things to look for?  A:  I didn't; no."  TT 1668:13-1669:3.  She confirmed on cross-examination that neither she nor Ms. Korb had looked for documents as requested category by category in Trustee's document request.  TT 1914:18-1915:3.  Sarah Cecconi also testified that she did not look for documents identified on the follow-up meet-and-confer letter of Trustee's counsel.  Exh. DM.  "Q [Ms. Shartsis]:  Do you have any specific recollection of looking – using this letter to look for documents referred to in it?  A:  No, I do not, because I wasn't there."  TT 1918:3-16.  She confirmed that she had not made any search for documents at her residence in Venice and suggested that she didn't have any there because there was "no room" in the four-bedroom house.      TT 2054:21-2055:2; TT 1698:22-25; and TT 1701:12-18.   Finally, Sarah Cecconi clearly testified that she had not reviewed all of her documents.  TT 1844:16-25.

Ms. Korb testified that she reviewed the five boxes sent to Sarah Cecconi from her office in Palm Beach, Florida, in early 1998, months before Trustee served his document request.  TT 867:21-868:2.  *See also* TT 2259:15-2260:4 (testimony from Ms. Seid to the effect that she had instructed Mrs. Cecconi to gather documents to support her case before receiving Trustee's document request and understood that Mrs. Cecconi had hired Ms. Korb to locate documents that would show that Mrs. Cecconi had paid for the Pebble Beach Property).  Therefore, Ms. Korb could not have seen Trustee's document request, and, in fact, there was no testimony that Ms. Korb was ever shown or given Trustee's document request.   Similarly, there was no testimony that Ms. Korb ever saw or received a copy of the meet-and-confer letter identifying specific categories of documents from counsel for Trustee (Exh. DM).[3]

Sarah Cecconi also admitted at trial that she had not discussed with Ms. Korb which documents should be gathered and produced.  "Q [Ms. Shartsis]:  Did you have any conversations

---

[3]     Counsel for Sarah Cecconi, Elaine Seid, who took the stand herself late in the trial, testified that she gave a copy of the meet-and-confer letter to Mrs. Cecconi.  Ms. Seid made no mention of giving a copy to Ms. Korb; neither did she testify that Mrs. Cecconi gave a copy to Ms. Korb or that Ms. Korb obtained a copy of the letter by some other means.  Rather, Ms. Seid merely claimed that "Mrs. Cecconi asked Ms. Korb to look in her files again."  Of course, counsel for Sarah Cecconi could have no personal knowledge of that request, if it occurred.  TT 2144:4-11.

1    with Ms. Korb about what documents should be collected and produced?  A:  No.”  TT 1919:25-

2    1920:2.  She also admitted that she gave Ms. Korb no instructions as to the document production:

3    “Q [Ms. Shartsis]:  . . . Did you give Ms. Korb any specific instructions?  A:  No, I did not.  I

4    knew nothing about any of this.”  TT 1928:13-14.

### 2.    Testimony regarding the discovery practices of counsel for Sarah Cecconi.

7        Counsel for Sarah Cecconi, Elaine Seid, confirmed in sworn testimony that neither she nor

8    anyone from her office reviewed Sarah Cecconi’s files to determine that all responsive documents

9    had been produced.    TT 2260:16-2261:8;  *see also id.* at 2263:14-2264:14;  2265:5-11;  and

10   2313:3-7 (“Q: And you have no personal knowledge whether all responsive documents in

11   Mrs. Cecconi’s possession were produced; do you?  A: I am relying on Mrs. Cecconi.  That’s

12   correct.”).  Counsel further testified that she had relied on her client—who is not trained as an

13   attorney and whom she knew felt angry and hostile to Trustee—to select, copy and forward to her

14   all responsive documents.  TT 2265:16-2266:11.

15       Ms. Seid admitted that she had no way of knowing whether Sarah had withheld any

16   documents harmful to her own position in this case.  TT 2310:8-11.  She also admitted it was

17   possible that Sarah Cecconi had made other redactions with liquid white-out that had not yet

18   come to light.  TT 2312:14-2313:7.

19       Sarah Cecconi testified that her counsel had never instructed her as to how documents

20   should be reviewed or produced.  TT 1733:25-1734:10.  Ms. Seid, for her part, testified that she

21   never met with Sarah Cecconi to explain the document request to her.  TT 2259:15-21.  She did

22   not ask her client whether she had any documents or records in Venice, where Sarah Cecconi

23   resides for more than half of each year.  TT 2262:5-8 and TT 1714:12-23.  She also failed to

24   instruct her client to preserve unaltered all potentially relevant documents.  TT 2295:12-15.

25   Sarah Cecconi herself testified that she threw away all documents she had originally maintained

26   in London, where her mother maintains a home and where Sarah Cecconi also spends significant

27   amounts of time.  TT 1700:25-1701:2 and TT 1712:1-19.

28       When the white-outs were discovered, counsel for Trustee promptly requested in writing

Shartsis  Friese  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9  4111

that counsel for Sarah Cecconi certify that no other documents had such white-outs and that all responsive documents had been produced.  Exh. DQ; *see also* Motion for Evidentiary Sanctions (Clerk's Record 138).  Counsel did not respond to that request and neither Ms. Seid nor Paul Avilla, Sarah Cecconi's trial counsel, ever provided the requested certification, even after the Bankruptcy Court criticized counsel's handling of the discovery process on the record during trial.  TT 1668:4-1670:18.

### 3.    Documents produced by Sarah Cecconi only just before or during trial or not produced at all.

Sarah Cecconi produced multiple relevant documents only on the eve of trial or after trial had commenced and never produced other documents referenced in her testimony or in her exhibits.  For example, she testified during trial that her father frequently wrote her letters in connection with his management of her finances from 1979 until his death in 1997.  TT 1698:7-19.  However, she produced only one letter from him, and produced that letter only after trial was underway.  Exh. 172.  She also produced her letter to him only after trial was underway.  Exh. 171.[4]  Exhibit 171 and Exhibit 170 were the only letters from Sarah Cecconi to her father that she ever produced in this litigation.

Sarah Cecconi submitted certain loan documents as exhibits at trial—documents she had not produced in discovery but which she asserted showed how she had financed the Pebble Beach Property.  Those documents were missing attachments that likely referred to Enzo Cecconi.  Exhibit 13, a letter from Ms. Korb to both Mr. and Mrs. Cecconi, references attached correspondence from First National Bank to both of them.  However, no letter to Mr. Cecconi or to both Mr. and Mrs. Cecconi was produced with this document.  Exh. 13; TT 1850:2-1851:6.  Exhibit 13 is also missing an attachment from First National Bank—the federal U-1 form which requires borrowers to state the purpose of the loan.  Other loan documents produced on the eve of trial were also missing the U-1 form.  *See, e.g.*, Exhs. 16 and 19; TT 1651:7-1652:13.

---

[4]    Exhibits 172 and 171 were clearly responsive to Trustee's document request.  Trustee asked for all documents referring or relating to the purchase, sale or transfer of the Property or any beneficial interest in the Property, and in Exhibit 172, Sarah Cecconi's father refers to the potential sale of the Property.  Exhibit 171 contains her response to this suggestion.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

Sarah Cecconi did not produce Exhibit DE, although she or someone acting on her behalf must have provided it to her personal attorney to take to London for depositions in this case. Exhibit DE, part of a letter, refers to Mr. Cecconi's dealings with the Royal Bank of Scotland and contains Sarah Cecconi's handwritten notes. TT 1796:24-1798:9. It was responsive to Trustee's document request because it references an "[a]dditional borrowing facility of £100,000 in respect of the California property" under the heading "G E and Mrs S C Cecconi"—but it was not produced. Neither did Sarah Cecconi produce the 20 or more additional pages of this document. (The two facsimile stamps at the top of the page indicate that it is "P.22" of one transmission and "PAG 21" of the other. Exh. DE.)

### 4.    Testimony regarding Sarah Cecconi's application of liquid white-out to documents.

At trial, Sarah Cecconi admitted that she had removed her husband's name from numerous insurance documents by applying liquid white-out to the pages before turning them over to her counsel for production. TT 1563:2-8; *see also id.* 1921:21-1922:2. Her counsel had previously stated in correspondence that Sarah Cecconi had used white-out to delete her husband's name from the insurance statements because "the insurance is for her home and she pays the insurance premium." Exh. DP. Sarah Cecconi confirmed at trial that this statement was true. TT 1930:6-24.

On cross-examination, Sarah Cecconi refused to acknowledge that she had altered the insurance documents:

> Q:    Mrs. Cecconi, you initiated this adversary proceeding against Mr. Spicer, didn't you?
>
> A:    Yes.
>
> Q:    And you knew that the judge in this case was going to have to make a decision as to the ownership of the property based on all of the evidence before him; didn't you?
>
> A:    Yes.
>
> Q:    And knowing that the judge was going to be relying on your truthfulness in producing all relevant evidence, you nonetheless altered several documents; isn't that true?

1    A:    I didn't alter them.  I just took my telephone number, social security, box, which are very private things, off.

2    Q:    And your husband's name?

3    A:    Well, you can see his name.

TT 1951:2-15.  Sarah Cecconi also testified that she didn't see anything wrong with deleting her husband's name.  TT 1567:7-12.  She did not tell her attorneys that she had obliterated his name until after counsel for Trustee discovered that fact and brought it to their attention.  TT 2094:19-24.  Exhs. DP and DR.

Sarah Cecconi also applied liquid white-out to multiple pages of cancelled checks showing payments for items related to the Pebble Beach Property.  Many of those cancelled checks have the memo line obliterated.  *See, e.g.*, Exhs. 88; 102 at 63 and 64; 103 at 59-61; 104 at 38, 49 and 50; 106 at 67, 69 and 95; 108 at 90 ff.; and 109 at 92 and 103.  On those pages, the liquid white-out was applied so thickly that it is impossible to determine what text originally appeared.  At trial, Sarah Cecconi could not or would not testify as to what information she deleted or why from those specific memo lines.  TT 2084:21-2085:3.  Sarah Cecconi could not say what originally appeared on any of those pages, and her counsel admitted under oath that the deleted text might include Enzo Cecconi's name or other information directly relevant to this litigation.  TT 2293:3-6.  Another letter produced by Sarah Cecconi only during trial contained large white spaces in the text.  Exh. 42 at 6; TT 716:6-719:6.  It was impossible to determine whether or how the document had been altered because the Cecconi team did not produce the original.

V.    **ARGUMENT**

Trustee did not receive a fair trial.  While the Bankruptcy Court tried to eliminate or offset the prejudice to Trustee that resulted from Sarah Cecconi's discovery abuses, it could not and did not remedy the harmful effects of those abuses—which emerged in much broader scope only at trial.  Moreover, it is entirely possible that a trial—with all of its attendant costs—could have been avoided had Sarah Cecconi not obliterated material evidence and complied with her basic discovery obligations.

**A.      The Bankruptcy Court's Very Limited Sanctions Award Was Based on Clearly Erroneous Factual Findings.**

The Bankruptcy Court's decision awarding Trustee only limited monetary sanctions was an abuse of its discretion.  It denied altogether Trustee's request for sanctions based on Sarah Cecconi's discovery abuses other than the alteration of evidence and was based on clearly erroneous factual findings—namely, that Sarah Cecconi's multiple discovery violations were not "utterly inconsistent with the orderly administration of justice" and that her spoliation of evidence did not prevent either the Bankruptcy Court or Trustee from determining what the affected documents originally had said.  A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings.  *In re Lopez*, 192 B.R. 539, 543 (9th Cir. B.A.P. 1996) ("A bankruptcy court would necessarily abuse its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence.").  In this case, the undisputed facts at trial and the Bankruptcy Court's own findings are entirely inconsistent with the Bankruptcy Court's final decision on the sanctions issue.

First, Trustee proved by the testimony of Sarah Cecconi, Ms. Korb and Ms. Seid discussed above that no one ever searched for documents responsive to Trustee's ***single*** set of requests for production of documents.  While counsel for Sarah Cecconi claimed that Ms. Korb performed that search, Ms. Korb in fact never saw the request for documents and therefore could not have made an appropriate search of any kind.  Ms. Korb's search, undertaken at the behest of Sarah Cecconi's counsel, was entirely focused on locating documents that would support Sarah Cecconi's own case.  The documents Sarah Cecconi produced to Trustee after having received Trustee's requests were in fact merely those documents that Ms. Korb had gathered to support Sarah Cecconi's own claims.  *See* discussion and citations, *infra*, at IV.B.1.

Second, Trustee also proved that counsel for Sarah Cecconi did not conduct a search for documents either before or during trial.  Indeed, Ms. Seid admitted that she left production entirely up to her client without any instruction.  Moreover, despite the fact that counsel for Trustee made direct written requests for assurance that all relevant documents had been produced, and that no other documents had been altered—requests made both prior to and in Trustee's

Sᴀʀᴛsɪs  Fʀɪᴇsᴇ ʟʟᴘ
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

1  original motion for sanctions—Sarah Cecconi's attorneys failed to make any certification

2  whatever, even after the issues were raised before and during the trial that continued with

3  substantial breaks over a two-month period.  The Bankruptcy Court expressed clear disapproval

4  of counsel's failure to fulfill basic discovery obligations, stating on the record that counsel's

5  actions were "irresponsible" and inappropriate:

6          Every document that related in any way to this property should have been
        produced to you [Ms. Seid], at least, and then you should have looked at it.  Any
7          document that had anything to do with their loans, their finances, anything you
        should have gotten.  And then you should have made these decisions, not Carla
8          Korb.

9          *    *    *

10          . . . You may decide ultimately as the lawyer that it is or isn't responsive, *but to
        have Carla Korb make that decision and to have you draw it narrowly for her was*
11          *irresponsible*.

12  TT 1668:4-1670:18.  Sarah Cecconi's failure to make any search for documents specifically

13  responsive to Trustee's requests and her counsel's failure to review any of Sarah Cecconi's

14  records herself are, by themselves, actions that are utterly inconsistent with the orderly

15  administration of justice, as the Bankruptcy Court itself recognized in its statement from the

16  bench during trial almost two years prior to the issuance of its Memorandum Decision.

17          Finally, counsel's failure to make an appropriate certification is itself evidence that the

18  conduct of Sarah Cecconi and her counsel was utterly inconsistent with the orderly administration

19  of justice.  By their deliberate choice, neither Sarah Cecconi nor her counsel conducted any

20  further search after the discovery violations came to light.  It is reasonable to infer that they did

21  not do so to avoid having to turn over documents disadvantageous to Sarah Cecconi or helpful to

22  Trustee.  The only reasonable conclusion to draw from the lack of certification by counsel is that

23  there were other responsive documents in Sarah Cecconi's possession, custody or control that

24  were never produced.

25  **B.    The Bankruptcy Court Improperly Placed on Trustee the Burden to Prove
        That Sarah Cecconi Had Examined Documents and Deliberately Chosen to
26          Withhold Them.**

27          The Bankruptcy Court was in error in placing the burden on Trustee to prove that there

28  were additional documents in Sarah Cecconi's possession, custody or control that she deliberately

Shartsis  Friese  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

failed to produce.   Trustee did not have access to Sarah Cecconi's multiple homes or her extensive files, which she claimed were contemporaneously and carefully compiled for years by Ms. Korb and other secretaries.  The burden should have been on Sarah Cecconi in light of the undisputed alteration of evidence and undisputed evidence that responsive documents were not produced prior to trial.  Sarah Cecconi's attorneys had an obligation to assure that a reasonable search had been conducted as officers of the Court—something that they completely failed to do.

Moreover, the evidence that Trustee did provide was sufficient to meet any burden. Trustee pointed out numerous instances where the testimony of Ms. Korb and Sarah and Enzo Cecconi could not be reconciled with Sarah Cecconi's production.  For example, Sarah Cecconi testified that her father often wrote her letters concerning her finances.  TT 1698:7-19.  Enzo Cecconi testified that he and his wife used Federal Express or another express service to send documents relating to the Pebble Beach Property to one another.   TT 1032:14-1033:10. Ms. Korb's office records corroborated that she paid, on behalf of Sarah Cecconi, for Federal Express service and facsimiles generated from her father's Palm Beach office.  *See e.g.*, Exh. 60 at 3 (check #1760 and check #1853); TT 874:17-23.  However, Sarah Cecconi produced only one letter from her father (Exh. 172)—and only on the first day of trial—and she produced no facsimiles (or facsimile cover sheets) or other correspondence between herself and either her father or Ms. Korb relating to the acquisition, financing or development of the Pebble Beach Property despite the fact that her father arranged for all financing and signed several documents relating to the development of the Pebble Beach Property on behalf of both Sarah and Enzo Cecconi and despite the fact that Ms. Korb handled and transmitted all of the necessary paperwork.  Sarah Cecconi never produced any other correspondence from her father other than the one letter, even though she testified that he often wrote her letters in connection with his management of her finances during his lifetime.  Similarly, she never produced any cover letters or other correspondence between her and her husband relating to the Pebble Beach Property. Trustee also established that many of the loan documents that Sarah Cecconi failed to produce in discovery but submitted as exhibits at trial were missing attachments that most likely referenced her husband.  *See* discussion and citations, *infra*, at IV.B.3.

Shartsis  Friese  llp
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  9    4111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 9    4111

1
2

**C.    Trustee Was Unavoidably Prejudiced by Sarah Cecconi's "Blatant" Spoliation of Evidence.[5]**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

The fact that Sarah Cecconi obliterated information on numerous relevant documents seriously prejudiced Trustee with respect to the conduct of the entire trial.    As argued in Appellant's Brief filed on September 4, 2007 at pages 47 through 48, the Bankruptcy Court clearly erred in finding that Sarah Cecconi's redactions had prevented neither the Bankruptcy Court nor Trustee from determining what text had originally appeared below the liquid white-out Sarah Cecconi applied to various documents.    In reality, the original text underneath the white-out could not be ascertained on a significant number of documents admitted into evidence at trial. *See, e.g.*, Exhs. 88; 102 at 63 and 64; 103 at 59-61; 104 at 38, 49 and 50; 106 at 67, 69 and 95; 108 at 90 ff.; and 109 at 92 and 103.    Sarah Cecconi testified that she could not recall why she had applied white-out to these documents and offered no testimony at all as to what text originally appeared there.  TT 2084:21-2085:3.  As Ms. Seid admitted on the stand, the redacted information might have included Enzo Cecconi's name or other information relevant to ownership of the Pebble Beach Property or the Cecconis' intent.    Because the white-out obliterated whatever had once appeared beneath it, neither Trustee nor the Bankruptcy Court had any way to determine what additional evidence was forever lost.  There is simply no way to know, and it was Sarah Cecconi's willful and deliberate spoliation of evidence that prevented this evidence from being known.[6]

20
21

The Bankruptcy Court specifically found that Sarah Cecconi's alteration of evidence was "blatant" (Memorandum Decision at 43) and could not have found that it was anything other than

22
23
24
25

[5]    Alteration of documents by obliteration of text through the application of liquid white-out constitutes spoliation of evidence.    Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107 (2nd Cir. 2001) (discussing the destruction of employment evaluations).  *See also* Black's Law Dictionary (8th Ed. 2004) (defining spoliation as the "intentional destruction, mutilation, alteration or concealment of evidence").

26
27
28

[6]    Notably, Sarah Cecconi did not white-out the memorandum line on all checks she produced—only some memorandum lines. *See, e.g.*, Exh. 109 at 58, 59 and 60. This strongly suggests that Sarah Cecconi made the deliberate choice to white-out some memorandum lines because those contained information she considered potentially harmful to her or helpful to Trustee.

deliberate, whatever her reasons might have been.  In fact, Sarah Cecconi confirmed from the stand, and it was undisputed, that she had whited-out her husband's name on homeowners' insurance documents because the insurance on the Pebble Beach Property was for "her home" and "she pays the insurance premium."  Exh. DP (Letter from Mr. Avilla to Ms. Hespenheide); TT 1930:6-24.  Moreover, whether or not the Pebble Beach Property is "her" property or community property was exactly the question that was to be decided by the Bankruptcy Court, and Sarah Cecconi knew that at the time she obliterated her husband's name from insurance documents.  Indeed, the Bankruptcy Court found that at the time Sarah Cecconi applied white-out to obliterate her husband's name from the insurance documents, she knew of Trustee's claims, and she had the duty to preserve evidence under the standard reiterated in *In re Napster*.  Memorandum Decision at 42-43.  Sarah Cecconi acted willfully and deliberately, and the Bankruptcy Court's decision denying an award of Trustee's full costs of trial was based on clearly erroneous factual findings and was an abuse of discretion.

**D.    An Award of All Fees and Costs Incurred by Trustee at Trial of This Matter Would Be Fair and Appropriate.**

Under the circumstances, Trustee and the creditors he represents were deprived of a fundamental right to a fair and orderly trial.  Neither Trustee nor the Bankruptcy Court could possibly conclude that this trial was conducted based on all relevant evidence to which Trustee was entitled.  An award of monetary sanctions for the attorneys' fees and costs Trustee incurred at trial would be appropriate given Sarah Cecconi's discovery misconduct—not only the whiting-out of information on relevant documents but her fundamental failure to make an appropriate search for documents and to produce all responsive documents.

The Bankruptcy Court has inherent authority to impose monetary sanctions for discovery abuse and other willful misconduct or bad faith conduct, including attorneys' fees.  *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 284-85 (9th Cir. 1996), citing, *inter alia*, *Chambers v. NASCO*, 501 U.S. 32 (1991).  As acknowledged by the Bankruptcy Court in its Memorandum Decision re Request for Monetary Sanctions, monetary sanctions should be imposed in an amount proportional to the wrongdoer's culpability.  *In re*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA   94111

*Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006).  An award of attorneys' fees for fees incurred over the course of an entire case may be appropriate in certain cases.   The United States Supreme Court approved just such an award of sanctions in *Chambers v. NASCO* based on the abusive and manipulative practices engaged in by the plaintiff both before and after trial.

The undisputed and serious discovery abuses that occurred in this case make it difficult if not impossible to quantify the financial impact of Sarah Cecconi's conduct.  Sarah Cecconi's falsification of evidence combined with her intentional disregard of her obligations to make a reasonable search and produce relevant documents undermined every aspect of Trustee's trial preparation and trial.  It is highly likely that evidence damaging to Sarah Cecconi's case remains in her possession or has been deliberately discarded or destroyed, particularly since Sarah Cecconi and her own attorneys refused to certify to the Court that the discovery abuses in this case had been remedied.

Because of the extreme nature and scope of Sarah Cecconi's discovery abuse, Trustee was forced to incur the costs of a protracted trial without all relevant evidence.  Given that Sarah Cecconi's counsel was given the opportunity to take steps to assure the Bankruptcy Court and Trustee that full discovery had been provided, but refused to do so, it must be inferred that relevant documents adverse to Sarah Cecconi's interests remained concealed from the Bankruptcy Court and Trustee.  In addition, Trustee was forced to proceed with the entire trial while hampered by not knowing what text originally appeared beneath Sarah Cecconi's white-outs of memo notations on cancelled checks and not knowing what other documents had been altered that Trustee was simply not able to find.

Under these circumstances, the only appropriate monetary compensation is a sanction equal to all of Trustee's trial costs, including attorneys' fees.  It is very likely that Sarah Cecconi has or had in her possession, custody or control additional documents favorable to Trustee's position and failed to produce them—or altered them before production was made.  Had all such documents been produced in their original form and had they not been concealed, altered or destroyed, there may have been no need for trial at all.  Any measure of monetary sanctions that

Shartsis  Friese  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

1   is less than the full costs of trial, therefore, would be unfair and inadequate.

2          Taken together, Sarah Cecconi's discovery violations—her complete failure to search for

3   documents requested by Trustee, her production of clearly responsive documents for the first time

4   in the middle of trial and her blatant spoliation of evidence while fully aware of Trustee's claims

5   against her—reveal a litigant who entirely disregarded her obligations under the federal judicial

6   system to ensure fairness and a trial on the merits based on all relevant evidence.  Given Sarah

7   Cecconi's pervasive misconduct and the irresponsibility of her counsel, Trustee should be

8   awarded the full costs of trial, including all reasonable attorneys' fees, as a monetary sanction.

9   Nothing less will appropriately punish and deter the wrongdoer in this case or even begin to

10  compensate Trustee for having to defend her claim at trial while hobbled every step of the way.

11  **VI.    CONCLUSION**

12         As Trustee has argued in the earlier appeal, this Court should impose terminating

13  sanctions against Sarah Cecconi—or at the least, an adverse inference sanction—and reverse the

14  Judgment of the Bankruptcy Court.  If this Court does not agree that Sarah Cecconi's conduct was

15  sufficiently willful to merit these sanctions, the Judgment should nonetheless be reversed and

16  judgment entered in favor of Trustee on Sarah Cecconi's Complaint to Establish Purchase Money

17  Resulting Trust in light of the clearly erroneous factual findings and errors of law identified in the

18  earlier Appellant's Brief.  In that event, Trustee at minimum should be awarded his full costs of

19  trial, including attorneys' fees, as an appropriate monetary sanction.

20  DATED:  January 7, 2008                    Respectfully submitted,
                                               SHARTSIS FRIESE LLP
21

22

23                                             By:    _/s/ Amy L. Hespenheide_
                                                      AMY L. HESPENHEIDE
24
                                               Attorneys for Appellant
25                                             A.C. SPICER, TRUSTEE IN BANKRUPTCY

6043\002\MSHARTSIS\1481351.3
26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111