McPHARLIN, SPRINKLES & THOMAS, LLP
ELAINE M. SEID Bar # 72588
PAUL S. AVILLA, Bar #120458
10 Almaden Blvd., Suite 1460
San Jose, California 95113
Telephone:  (408) 293-1900
Facsimile:  (408) 293-1999

Attorneys for Plaintiff
SARAH CECCONI

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No.  5:07-CV-06194-JW |
| GIUSEPPE ENZO CECCONI, | |
| Debtor. | |
| | **APPELLEE'S BRIEF** |
| SARAH CECCONI, | |
| Plaintiff, | |
| v. | (MONETARY SANCTIONS APPEAL) |
| GIUSEPPE ENZO CECCONI, A.C.SPICER, TRUSTEE IN BANKRUPTCY (UNDER U.K. INSOLVENCY LAWS), | The Hon. James Ware |
| Defendants | |
| A.C. SPICER, TRUSTEE IN BANKRUPTCY, | |
| Appellant, | |
| v. | |
| SARAH CECCONI, | |
| Respondent | |

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  STATEMENT OF ISSUES ON APPEAL ................................................. 3

III.  STANDARD OF REVIEW ................................................. 4

IV.  STATEMENT OF THE CASE ................................................. 6

V.  ARGUMENT ................................................. 7

    A.  The Bankruptcy Court Did Not Abuse its Discretion in Denying Spicer's Request For Monetary Sanctions in the Full Amount of Spicer's Fees Incurred at Trial ................................................. 7

    B.  The Bankruptcy Court Was Not Clearly Erroneous in Finding that Sarah Appropriately Reviewed Documents For Production and Did Not Withhold Documents ................................................. 11

    C.  The Bankruptcy Court's Finding that Sarah's Redaction of Documents Did Not Prevent the Court From Determining What the Documents Said is Not Clearly Erroneous ................................................. 15

    D.  Spicer Received a Fair Trial and a More Than Adequate Award of Sanctions ................................................. 17

VI.  CONCLUSION ................................................. 18

# TABLE OF AUTHORITIES

**Statutes**

Fed. Rules Civ.Proc. 52(a) ......................................................................................................... 5

**Cases**

*Anderson v. Air West, Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976) ......................................... 4

*Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) ............................................... 4, 5

*Caldwell v Unified Capital Corp. (In re Rainbow Magazine),* 77 F.3d 278 (9th Cir. 1996) ............... 9

*Chambers v. NASCO,* 501 U.S. 32 (1991) ..................................................................... 8, 9

*Clady v. County of Los Angeles* 770 F.2d 1421, 1431 (9th Cir. 1985) .................................. 5

*Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985) ................................. 4

*Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 621 (7th Cir. 1982) .................... 4

*In re Napster. Inc. Copyright Litigation,* 462 F.Supp. 2d 1060 (N.D. Cal. 2006) ........................... 10

*In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985) ............................................................. 4

*In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th Cir. 1971) .............................................. 4

*Indiana State Employees Assoc. v Negley* 501 F.2d 1239, 1242 (7th Cir. 1974) ................................ 5

*Kesend v Dupont Towers, Inc.* 427 F.2d 316, 318 (5th Cir. 1970) ........................................... 5

*Knupfer v Lindblade (In re Dyer),* 322 F.3d 1178, 1198 (9th Cir. 2003) ................................. 10, 11

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 49 L. Ed. 2d 747,
    96 S. Ct. 2778 (1976) (per curiam) ....................................................................... 4

*Smith v Porter* 143 F.2d 292 (8th Cir. 1944) ............................................................... 5

*UMC Elecs. Co. v United States* 249 F3d 1337 (Fed. Cir. 2001) ............................................. 5

*United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1270 (9th Cir. 1985) ................... 4

*United States v Aluminum Co. of America* 148 F.2d 416, 65 (2nd Cir. 1945) ................................. 6

United *States v Comstock Extension Mining Co.* 214 F.2d 400, 402-403 (9th Cir. 1954) ................... 6

*United States v LSL Biotechnologies,* 379 F.3d 672, (9th Cir. 2004) ..................................... 6

*United States v. National Medical Enters, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986) ..................... 4

*United States v. U.S. Gypsum* Co., 333 U.S. 364, 395 (1948) ............................................................. 4

*United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949) ........................................................... 4, 6

*Weber v Alabama-California Gold Mines Co.* 121 F.2d 663, 665 (9th Cir. 1941) ............................ 6

*Wineberg v.* Park 321 F.2d 214, 217 (9th Cir. 1963) ......................................................................... 6

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

While copying documents for production, Sarah Cecconi used liquid white-out to remove certain of her private information (social security number, bank account numbers, her mother's mailing address) from documents being produced.  Based on conversations with her counsel, Sarah believed she was permitted to make those redactions.  While redacting her private information, Sarah also noticed her husband Enzo Cecconi's name as the addressee on property insurance statements relating to Sarah's home.  Sarah became upset with her husband for causing her to become involved in this litigation, and began whiting out Enzo's name on the insurance statements.  As Sarah testified during trial, she soon became tired of redacting Enzo's name and stopped doing so.  Sarah thus produced many insurance statements where Enzo's name was intact.  Sarah's counsel knew that Sarah had removed her private information from the documents, but was not aware at the time that Sarah had redacted Enzo's name from some of the insurance statements.

Immediately before trial, Spicer filed a Motion for Evidentiary Sanctions on the basis of Sarah's removal of Enzo's name from the insurance statements.  Knowing that he faced an overwhelming body of evidence against him on the merits of the case, Spicer's trial strategy was to parlay Sarah's alteration of the insurance statements into a basis for judgment in Spicer's favor.  In his motion, Spicer requested that the Court "infer" – on the basis of Sarah's improper redaction of Enzo's name -- that Sarah had withheld relevant documents during discovery.  Spicer also complained that documents produced by Sarah the week before trial, in response to an argument made *for the first time* by Spicer in his trial brief, should have been produced before and evidenced further misconduct on Sarah's part.

At the hearing on Spicer's Motion for Evidentiary Sanctions, held the first day of trial, the Bankruptcy Court offered to continue the trial and allow Spicer to conduct depositions and further discovery regarding Sarah's alteration of documents and the adequacy of her discovery responses.  Spicer declined the Court's offer and instead elected to examine Sarah on those issues during trial.   Spicer's motion for sanctions was carried with the case.  During trial, Spicer

cross-examined Sarah and other witnesses, including Sarah's counsel, about Sarah's alteration of the insurance statements, as well as Sarah's efforts to locate and produce documents in discovery.

In his post-trial briefs, Spicer broadened the basis for his request for sanctions, arguing fervently that Sarah had engaged in "widespread discovery abuse," including failing to search for documents during discovery and withholding numerous relevant documents. With no real evidence other than the white out issue, Spicer waged a very personal attack on Sarah's credibility and urged the court to discredit all of her testimony and award terminating sanctions.

In its Memorandum Decision after Trial, the Bankruptcy Court rejected Spicer's accusations of widespread discovery abuse by Sarah. The Court found that, with the assistance of her bookkeeper, Carla Korb, Sarah had appropriately reviewed documents for production and there was no evidence that Sarah had withheld documents from production.

Having heard Sarah's testimony about how and why she removed Enzo's name from the insurance statements the Court also found that Sarah's removal of Enzo's name from the insurance statements, while improper, was not done with any intent to conceal evidence from Spicer or the Court. Rather, the Court found that Sarah had whited-out Enzo's name because Sarah was angry with Enzo for getting her involved in this litigation.

The Court refused Spicer's request for terminating sanctions or evidentiary sanctions, correctly deciding that Sarah's single lapse in judgment was not a basis on which the outcome of the case should be reversed and Sarah should be made to forfeit her home. The Court nonetheless found that Sarah's alteration of evidence justified awarding Spicer monetary sanctions and ultimately awarded Spicer the amount of $113,373.50, representing all of the attorneys' fees that Spicer was conceivably caused to incur in addressing the issue of Sarah's alteration of documents.

In this appeal, Spicer persists in his attempt to seek punitive recourse for Sarah's mistake. Spicer effectively seeks an award of monetary sanctions representing all of the fees incurred by

Spicer at trial and in post-trial briefing, or approximately $700,000.[1]  However, under Ninth Circuit law, that result is flatly prohibited.  Monetary sanctions awarded under the Court's inherent powers, as was done here, are limited to the amount necessary to compensate the aggrieved party for the wrongful conduct.  Spicer was awarded all of the fees that were conceivably caused or related to Sarah's misconduct.  To award sanctions in any greater amount would have been an abuse of discretion by the Bankruptcy Court.  For that reason, the Bankruptcy Court's sanction award should stand.

## II.    STATEMENT OF ISSUES ON APPEAL

Sarah takes issue with Spicer's Statement of Issues in this appeal.  Considering the arguments made in Spicer's Appellant's Brief (Monetary Sanctions Appeal), this appeal appears to raise the following four issues:

1.    Whether, based on the findings of fact made by the Bankruptcy Court, the Court abused its discretion in denying Spicer's request for terminating or evidentiary sanctions;

2.    Whether, based on the findings of fact made by the Bankruptcy Court, the Court abused its discretion in denying Spicer's request for monetary sanctions equal to all of the attorneys' fees Spicer incurred at trial;

3.    Whether the Bankruptcy Court was clearly erroneous in finding that Sarah Cecconi had conducted an adequate search for documents responsive to Spicer's discovery requests and that she had not withheld documents in discovery; and

4.    Whether the Bankruptcy Court was clearly erroneous in finding that Sarah's application of white-out to documents she produced prevented neither the Bankruptcy Court nor Spicer from determining what text had been redacted.

---

[1]  Clerk's Record ("C.R."), Docket No. 204, Declaration of Mary Jo Shartsis in Support of Spicer's Request For Attorneys' Fees as Monetary Sanctions, ¶10, Exh. I.

The parties agree that the first issue has been briefed in the appeal of the judgment on the merits of this case, pending before this Court.

## III.    STANDARD OF REVIEW

The court's award of monetary sanctions is reviewed for abuse of discretion.[2]  This Court should not reverse absent a definite and firm conviction that the Bankruptcy Court made a clear error of judgment.[3]  The question is not whether this court would have, as an original matter, decided the issue differently, but whether the trial court exceeded the limits of its discretion.[4]

The Bankruptcy Court's factual determinations regarding Sarah's conduct in discovery are reviewed under the "clearly erroneous" standard.[5]  Under this standard, the findings of the Bankruptcy Court must be upheld, unless the District Court, on review of the entire evidence, arrives at the definite and firm conviction that the finding is mistaken.[6]  When the evidence will support a conclusion either way, a trial judge's choice between two permissible views of the weight of the evidence cannot be clear error.[7]  Courts also say that the appellate court may not reject findings just because it might have come to a different result on the same evidence or

---

[2]    *United States v. National Medical Enters, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986); *United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1270 (9th Cir. 1985).

[3]    *Id.*

[4]    *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (per curiam); *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985).

[5]    *United States v. National Medical Enters, Inc.,* 792 F.2d 906, 911 (9th Cir. 1986); *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985); *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976); *Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 621 (7th Cir. 1982).

[6]    *United States v. U.S. Gypsum* Co., 333 U.S. 364, 395 (1948); *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985); *In re U.S.A. Motel Corp.*, 450 F.2d 499, 503 (9th Cir. 1971).

[7]    *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949).

given the facts another construction when the district court's interpretation is not clearly erroneous.  In 1985, the Supreme Court, in *Anderson v. Bessemer City*,[8] emphasized:

> *"The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court... . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."*

Trustee's burden of demonstrating that the Bankruptcy Court's factual findings are clearly erroneous is a heavy one.[9]  This burden is especially strong in a case such as this, where findings are primarily based upon oral testimony and the trial judge has viewed both the demeanor and the credibility of the witnesses.[10]  When a trial judge's finding is based on his decision to credit the testimony of a witness that has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding can virtually never be clear error.[11]  Extra deference may be accorded to findings that are based on the credibility of witnesses.[12]

In reviewing the trial court's findings of fact, the appellate court is required to take that view of the evidence which is most favorable to the appellees.[13]  All controverted questions of

---

[8]   470 U.S. 564, 573-74 (1985).

[9]   *Kesend v Dupont Towers, Inc.* 427 F.2d 316, 318 (5th Cir. 1970).

[10]   *Indiana State Employees Assoc. v Negley* 501 F.2d 1239, 1242 (7th Cir. 1974).  *UMC Elecs. Co. v United States* 249 F3d 1337 (Fed. Cir. 2001).

[11]   *Bessemer,* supra 470 U.S. at 564, 573; *Clady v. County of Los Angeles* 770 F.2d 1421, 1431 (9th Cir. 1985).

[12]   Fed. Rules Civ.Proc. 52(a); *Bessemer*, supra 470 U.S. at 574-575.

[13]   *Smith v Porter* 143 F.2d 292 (8th Cir. 1944).

fact must be taken in their most favorable possible light for the parties who prevailed at the trial.[14]

Since the Bankruptcy Court's findings regarding Sarah's conduct in discovery are based largely on the testimony of Sarah, Carla Korb and Sarah's legal counsel, Elaine Seid, and a credibility determination made by the trial court with respect to those witnesses, the findings must be treated as unassailable.[15]  As the U.S. Supreme Court has stated: *"findings as to the design, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who see and hear them."*[16]  Thus, if there was no conflict in the evidence and the question is whether the testimony of a witness should be believed, the finding of the trial court is conclusive.[17]

## IV.    STATEMENT OF THE CASE

Sarah incorporates the Statement of the Case section of her Appellee's Brief in the related appeal of the Bankruptcy Court's decision on the merits, with the following addition.

In its Memorandum Decision after Trial (on the merits of the case), issued April 17, 2007, the Bankruptcy Court denied Spicer's request for terminating sanctions or evidentiary sanctions based on Sarah's alteration of documents.  The Court also denied Spicer's alternative request for monetary sanctions equal to all of Spicer's attorneys' fees and costs at trial.  Instead, the Bankruptcy Court directed Spicer to file a motion for monetary sanctions with supporting evidence of the attorneys' fees incurred by Spicer in addressing the specific issue of Sarah's alteration of documents.

---

[14]  *Wineberg v.* Park 321 F.2d 214, 217 (9th Cir. 1963); United *States v Comstock Extension Mining Co.* 214 F.2d 400, 402-403 (9th Cir. 1954).

[15]  *United States v Aluminum Co. of America* 148 F.2d 416, 65 (2nd Cir. 1945) (superseded by statute on other grounds as stated in *United States v LSL Biotechnologies,* 379 F.3d 672, (9th Cir. 2004).

[16]  *United States v. Yellow Cab Co.*, 338 U.S. 338, 341, 94 L. Ed. 150, 70 S. Ct. 177 (1949).

[17]  *Weber v Alabama-California Gold Mines Co.* 121 F.2d 663, 665 (9th Cir. 1941).

Spicer's Motion for Monetary Sanctions was heard on June 7, 2007. The Court took the matter under submission and, on October 16, 2007, issued its Memorandum Decision Re Request for Monetary Sanctions, awarding Spicer the sum of $113,373.50 in monetary sanctions.

On November 16, 2007 the Court entered its Order Awarding Monetary Sanctions. This appeal followed.

## V.    ARGUMENT

### A.    The Bankruptcy Court Did Not Abuse its Discretion in Denying Spicer's Request For Monetary Sanctions in the Full Amount of Spicer's Fees Incurred at Trial.

At section V.D. of his Appellant's Brief, Spicer argues that "An Award of All Fees and Costs Incurred by Trustee at Trial of This Matter would be Fair and Appropriate." That is not, however, the issue before this Court. The precise issue is whether the Bankruptcy Court abused its discretion in denying Spicer's request for all fees incurred at trial, and instead awarding sanctions of $113,373.50. In addressing this issue, Sarah assumes that the court's factual findings are correct, since the factual findings underlying the sanction award are challenged elsewhere in this appeal and also in the appeal of the judgment on the merits. If those factual findings are found to be clearly erroneous in any material respect, then the issue of the appropriate amount of sanctions will, in any event, be revisited by this Court or by the Bankruptcy Court.

Thus, the issue of whether the Bankruptcy Court was within its discretion in denying Spicer's request for all fees incurred at trial should be considered on the basis that Sarah was only found to have altered documents in a single instance, in a careless act of frustration that, while serious and justification for some form of sanction, did not prejudice Spicer in the presentation of his case and did not impede Spicer's or the Court's ability to determine the content of the altered documents. On the basis of these facts, Spicer has failed to cite even one case that suggests the Bankruptcy Court abused its discretion. Indeed, based on the current law

in the Ninth Circuit, as discussed below, the Bankruptcy Court would *necessarily* have abused its discretion had it made the award that Spicer seeks -- all of his fees incurred at trial.

Spicer cites the United States Supreme Court case of *Chambers v. NASCO*[18] for the proposition that an award of attorneys' fees incurred over the course of an entire case may be appropriate. However, the facts of the *Chambers* case represent one of the most extreme cases of lawyer and party misconduct on record. In contrast, the Bankruptcy Court here specifically found that Sarah's alteration of documents was not extreme in nature.[19]

Before the litigation even commenced in the *Chambers* case, Chambers and his counsel fraudulently transferred the properties that were the subject of an anticipated action for specific performance. During the litigation, Chambers continued to abuse the judicial process, defied a preliminary injunction, ignored discovery orders, was found in contempt, and later proceeded with a series of meritless motions and pleadings and delaying actions that triggered further warnings from the court. At one point, to make his point clear, the District Judge gave counsel copies of a then-recent article, "Sanctions Under the New Federal Rule 11 – A Closer Look." At trial, defendants effectively offered no defense. In the interim between the trial and the entry of judgment, Chambers sought to render the judgment meaningless by attempting to relocate transmission facilities that were subject to the contract for which the court ordered specific performance. Only after NASCO sought contempt sanctions for this conduct did Chambers abandon his attempt to relocate the facilities. NASCO was ultimately forced to file further proceedings to enforce the judgment entered in its favor. Chambers then filed an appeal that was found to be frivolous. The appellate court imposed appellate sanctions in the form of attorneys' fees and double costs and remanded the case to District Court with orders to fix the amount of appellate sanctions and to determine whether further sanctions should be imposed for the manner in which the litigation had been conducted.

---

[18]   501 U.S. 32 (1991).

[19]   C.R., Docket No. 202, *Memorandum Decision After Trial* ("*Decision*"), at p. 43.

At the end of an extensive opinion recounting the sanctionable conduct of Chambers and his counsel, the District Court imposed sanctions against Chambers in the form of attorneys' fees and expenses totaling $996,644, which represented the entire amount of NASCO's attorneys' fees and costs.  The District Court also sanctioned Chambers' counsel.  One lawyer was disbarred and prohibited from seeking re-admission for three years.  Another attorney was suspended from practice before the court for five years and yet another attorney was suspended for six months.  In itemizing the misconduct of Chambers and his counsel, the District Court noted that Chambers had: (1) attempted to deprive the Court of jurisdiction by acts of fraud; (2) filed false and frivolous pleadings; and (3) attempted, by other tactics of delay, oppression, harassment and massive expense to reduce the plaintiff to exhausted compliance. [20]  The District Court found that Chambers' actions were *"part of [a] sordid scheme of deliberate misuse of the judicial process"* designed *"to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources."*

Spicer cites only two other cases in challenging the Bankruptcy Court's sanction award, neither of which suggests that the Court abused its discretion here.  In *Caldwell v Unified Capital Corp. (In re Rainbow Magazine)[21]* the sanctioned individual, Caldwell, was found to have engaged in an elaborate scheme to frustrate a secured creditor's collection efforts, including making a bad-faith bankruptcy filing, filing a misleading and inaccurate petition to manipulate the jurisdiction of the court, "hijacking" property of the estate and diverting nearly a half-million dollars in rental income without court approval and without the secured creditor's consent.  Based on those facts, the Bankruptcy Court sanctioned Caldwell in the amount of $45,000 for filing a false statement of affairs and $249,389.31 under its inherent powers for orchestrating a bad-faith bankruptcy and abusing the bankruptcy process.

---

[20]  501 U.S. at 42.

[21]  77 F.3d 278 (9th Cir. 1996).

The last case cited by Spicer, *In re Napster. Inc. Copyright Litigation,*[22] provides no guidance on what is an appropriate level of monetary sanctions in any given case. There, defendant Hummer Winblad (an investor in Napster) was found to have willfully deleted emails related to Napster in order to avoid producing the emails in litigation. The emails never were recovered. The District Court found that plaintiffs were entitled to an award of attorneys' fees that was reasonable in light of the degree of Hummer's culpability. The Court directed plaintiff to file a request for a specific amount of fees, with evidentiary support, for the Court's consideration. However, the opinion includes no discussion on the subject of the appropriate amount of sanctions.

At most, the three cases cited by Spicer suggest that in extreme cases the court may, under its inherent powers, award monetary sanctions representing all of the opposing party's attorneys' fees. These cases say nothing about the limits of a Court's discretion in a case similar to ours, where the Court is seeking to address a single, albeit serious, discovery violation. This Court is not, however, without guidance on this issue. In fact, the law in the Ninth Circuit on this point is clear and indicates that the Bankruptcy Court's sanction award represents the uppermost limit of the Court's discretion.

The Bankruptcy Court here awarded sanctions under the courts' inherent power *"to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."*[23] The court's inherent authority to sanction authorizes compensatory sanctions only.[24] Thus, the amount of sanctions awarded in this case – representing all of Spicer's attorneys' fees that were conceivably caused by Sarah's alteration of the insurance statements – was the *most* that could be awarded under the court's inherent powers. Any award in excess of the fees incurred by

---

[22]  462 F.Supp. 2d 1060 (N.D. Cal. 2006).

[23]  C.R., Docket No. 202, *Decision,* at p. 36, *quoting In re Napster, supra,* at 462 F.Supp.2d at 1066.

[24]  *Knupfer v Lindblade (In re Dyer),* 322 F.3d 1178, 1198 (9th Cir. 2003).

Spicer as a result of Sarah's conduct would necessarily have been punitive in nature and would have exceeded the Bankruptcy Court's authority.[25]  Thus, not only was it *not* an abuse of discretion for the Bankruptcy Court to make the sanction award it did in this case, it would necessarily have been an abuse of discretion for the Court to award all of Spicer's fees at trial, as he requested.

### B.    The Bankruptcy Court Was Not Clearly Erroneous in Finding that Sarah Appropriately Reviewed Documents For Production and Did Not Withhold Documents.

It is only after some amount of "legal sleuthing" that one can determine that in this appeal Spicer challenges, among other things, the following two factual findings made by the Bankruptcy Court: (1) that Sarah made an appropriate review of her documents in response to Spicer's discovery requests; and (2) that Sarah did not withhold documents in discovery.

The "Statement of Issues" section of Spicer's Appellants' Brief is remarkably unhelpful in identifying the issues raised in this appeal.  Spicer ambiguously identifies the third issue as:

> *"Whether the Bankruptcy Court's denial of monetary sanctions for Sarah Cecconi's failure to conduct a reasonable search for documents requested during discovery and her failure to produce before trial responsive documents she then offered at trial was an abuse of discretion or clearly erroneous in light of the undisputed facts before the Bankruptcy Court."[26]*

Spicer frames this issue as though the Bankruptcy Court found that Sarah failed to conduct a reasonable search for documents and withheld documents in discovery.  In fact, the Court made specific factual findings to the contrary.  Remarkably, Spicer's Appellant's Brief never acknowledges or identifies the factual findings which underlie the Court's sanction award and which Spicer appears to be challenging on this appeal.  The closest Spicer comes to

---

[25]  *Id.* at 1197-98.

[26]  Spicer's reference to both the "abuse of discretion" and the "clearly erroneous" standards of review further obscures the actual issue being raised.

accurately identifying the findings he is challenging is to argue that the Bankruptcy Court was clearly erroneous in finding *"that Sarah Cecconi's multiple discovery violations were not 'utterly inconsistent with the orderly administration of justice'"*.[27] Even here, Spicer cannot resist framing the issue as though the Court found that Sarah committed multiple discovery violations, which it clearly did not. [28]

Spicer's confused brief thus places the burden on Sarah and this Court to discern what it is Spicer is challenging. Based on the argument throughout Spicer's brief to the effect that Sarah allegedly failed to search for documents responsive to Spicer's document requests and intentionally withheld documents from Spicer, this can only mean that Spicer is challenging, as clearly erroneous, the following factual findings made by the Bankruptcy Court in connection with Spicer's Motion for Evidentiary Sanctions:

Regarding Spicer's accusations that Sarah had failed to search for documents responsive to Spicer's discovery requests, the Court found:

1.    In response to Spicer's First Set of Requests for Production of Documents, Sarah reviewed her financial records.[29]

---

[27]  Appellant's Brief (Monetary Sanctions Appeal), at p. 11, lines 6-7.

[28]  Throughout his brief, Spicer persists in ignoring the Bankruptcy Court's findings to the contrary, and characterizes the proceedings below as though the court found that Sarah engaged in widespread discovery abuse. He states that the Bankruptcy Court *"declined to award sanctions based on Sarah Cecconi's other discovery misconduct;"* (Appellant's Brief (Monetary Sanctions Appeal), p. 10, lines 23-24); and that the Court denied sanctions *"for other serious discovery abuses, including [Sarah's] failure to search for responsive documents in discovery."* (Appellant's Brief (Monetary Sanctions Appeal), p. 4, lines 13-14). Spicer also states that: *"[T]he Bankruptcy Court tried to eliminate or offset the prejudice to Trustee that resulted from Sarah Cecconi's discovery abuses."* (Appellant's Brief (Monetary Sanctions Appeal), p. 10, lines 23-24).

[29]  C.R., Docket No. 202, *Decision*, at p. 32.

2.    Carla Korb, who maintained Sarah's financial records from 1980 to 1998,[30] assisted Sarah in searching for documents for this litigation and was familiar with the majority of documents;[31] and

3.    Most, but not all, of the documents Ms. Korb reviewed in response to the Document Request were still in the files as they had been kept by Sarah's father, who retained possession of Sarah's financial records until his death;[32]

Regarding Spicer's accusation that Sarah withheld documents, the Court found:

1.    There is no evidence that Sarah systematically reviewed documents in her possession and decided not to produce them. [33]

The Court's findings with respect to Sarah's efforts to respond to Spicer's discovery requests are supported by the evidence cited by Sarah at section III.A. of the Argument section of Sarah's Appellee's Brief in the appeal of the judgment on the merits, which addresses this same issue and is incorporated herein.

The Court's finding to the effect that Sarah did not withhold documents in discovery is supported by evidence that Sarah initially produced approximately 2,000 pages of documents in response to Spicer's document request[34] and produced hundreds of additional pages in a supplemental production.[35]  This finding is also supported by the simple fact that Spicer has never produced any evidence to support his accusation that Sarah withheld documents in this case.  The most that Spicer has done is to request that the Bankruptcy Court -- and now this

---

[30]   C.R., Docket No. 202, *Decision*, at p. 11.

[31]   C.R., Docket No. 202, *Decision*, at p. 32.

[32]   C.R., Docket No. 202, *Decision*, at p. 32.

[33]   C.R., Docket No. 202, *Decision*, at p. 38.

[34]   Docket No. 172, Trial Transcript ("TT") 2142:19-22 (Seid testimony).

[35]   Docket No. 172, TT: 2144:20 – 2145:5 (Seid testimony).

Court -- "infer" that Sarah withheld documents, based on little more than conjecture and speculation.

Spicer first argues that this Court should conclude that Sarah withheld documents in discovery, based on the fact that her counsel did not provide a certification, during trial, to the effect that Sarah had produced all responsive documents in discovery.   However, after Spicer demanded that certification in connection with his motion for sanctions, Spicer elected to proceed with the trial and examine Sarah and the other witnesses at trial, including Sarah's counsel, regarding Sarah's conduct in discovery.[36]   Therefore, "certification" of Sarah's efforts in discovery was given in the form of sworn live testimony during the trial.  Moreover, Spicer never established any basis on which he would have been entitled to some further certification and the Bankruptcy Court never directed Sarah or her counsel to provide one.  Therefore, Spicer's argument on this point does not present evidence suggesting that the Bankruptcy Court's factual findings are clearly erroneous.

Spicer's second argument about missing documents is based on Sarah's testimony that her father often wrote her letters concerning her finances and Enzo's testimony that he and Sarah sent documents regarding the Pebble Beach Property to one another when signatures were required for some reason.  Because only one letter from Sarah's father was produced in the case (during trial) and Sarah produced no fax cover sheets or cover letters having to do with the Pebble Beach property, Spicer requests that this Court infer that Sarah withheld documents. Again, Spicer does not explain why this evidence demonstrates clear error by the Bankruptcy Court.  Spicer never identifies the document request that would have required Sarah to produce every letter from her father, or every fax cover sheet for every document sent between Enzo and Sarah.  Moreover, the significant events of this case, including the acquisition and financing of the Pebble Beach property, all occurred between 1985 and 1995.  The fact that Sarah would not

---

[36]   Docket No. 158, TT: 16:11-20; 23:15 – 24:10; 26:18-21.

have, or be able to locate, every document that might have existed 20 years previously is not evidence that she withheld documents.

Spicer also argues that certain loan documents introduced at trial were missing attachments that Spicer asserts *"most likely referenced [Sarah's] husband."*[37]   Again, it was remarkable that Sarah was able to locate and produce the breadth and number of documents she did and the fact that some documents were incomplete, or that some attachments were missing, is not evidence of improper conduct.

Finally, Spicer argues that Sarah did not produce Exhibit DE during discovery, which Spicer asserts was responsive to Spicer's discovery request.  Spicer does not identify the document request to which Exhibit DE would have been responsive and, in fact, the document does not appear to be responsive to any of the document requests included in Exhibit DG, the single set of document requests served by Spicer in the case.  Exhibit DE is a letter from the Royal Bank of Scotland to Enzo Cecconi, concerning discussions between Enzo and the Bank about Enzo's "ongoing borrowing requirements."  Although the letter includes reference to a borrowing facility "in respect of the California property," the Royal Bank of Scotland was never involved in any way in any financing done regarding the Pebble Beach Property.  Spicer fails to show how this document is responsive to any of his discovery requests, or how Sarah's failure to produce this particular document is evidence that she withheld documents in discovery.

### C.    The Bankruptcy Court's Finding that Sarah's Redaction of Documents Did Not Prevent the Court From Determining What the Documents Said is Not Clearly Erroneous.

The last issue raised in this appeal is Spicer's challenge to the Bankruptcy Court's factual finding that Sarah's application of liquid white out to documents in discovery *"did not prevent the evidence from being introduced at trial and did not prevent either the Trustee or this Court*

---

[37]   Appellant's Brief (Monetary Sanctions Appeal), at p. 13, lines 27-28.

*from ascertaining what those documents said.*[38]   In challenging this finding, Spicer argues that the original text underneath some of the white out could not be ascertained on a number of documents.[39]   In making this argument, Spicer refers to documents other than the insurance statements from which Sarah removed Enzo's name.   Thus, Spicer is referring to other documents such as canceled checks, bank statements and other documents.

With respect to the white out redactions other than Enzo's name, the Court found that Sarah removed private information from some documents and that she was under the impression she could delete this information, based on conversations with her counsel.[40]   The Court specifically found that Sarah's alteration of these documents, as well as the insurance statements, *"has not impaired this Court's ability to read or interpret the various documents placed into evidence."*[41]   The Court found that "Sarah testified credibly that she altered evidence to protect her and the Duchess' private information . . ."[42]   Thus, the record contains evidence, in the form of Sarah's testimony[43] that was found by the Bankruptcy Court to be credible, regarding the subject of the redactions.   It is also difficult to see how Spicer can challenge the Court's factual finding about what the Court was itself able to ascertain with respect to the redactions.

On balance, Spicer has utterly failed to demonstrate to this Court that the Bankruptcy Court's factual findings underlying the sanction award were clearly erroneous.

---

[38]   C.R., Docket No. 202, *Decision*, at p. 42.

[39]   Appellant's Brief (Monetary Sanctions Appeal), at p. 14, lines 8-11.

[40]   C.R., Docket No. 202, *Decision*, at p. 42-43.

[41]   C.R., Docket No. 202, *Decision*, at p. 43.

[42]   C.R., Docket No. 202, *Decision*, at p. 38.

[43]   Docket No. 166, TT 1562:13 –1563:11 (Sarah testimony).

**D.    Spicer Received a Fair Trial and a More Than Adequate Award of Sanctions.**

Spicer cannot credibly claim that he was denied a fair trial.  At the beginning of trial, after Spicer had filed his Motion for Evidentiary Sanctions and after Spicer had already complained about Sarah's production of documents in response to the arguments raised in Spicer's Trial Brief, the Bankruptcy Court offered to continue the trial to allow Spicer to conduct further discovery and take whatever other actions Spicer thought appropriate.  Thus, if Spicer believed that Sarah had withheld documents in discovery, he could have accepted the court's offer to continue the trial in order to properly bring a discovery motion.  By declining the offer of a continuance and electing to proceed with the trial, Spicer's counsel waived any argument that Spicer was prejudiced at trial by either the redaction of documents or the adequacy of Sarah's discovery requests.  The appropriate way to challenge a party's discovery responses is in a properly filed discovery motion in which the movant identifies the particular request and the response thereto.  Spicer has instead argued that the court should draw inferences that Sarah failed to adequately respond to Spicer's discovery requests, referring to documents and excerpts of testimony introduced at trial – none of which is compelling.

It is particularly remarkable that Spicer would complain about receiving a sanction award of $113,373.50, given that no evidence of prejudice was ever shown.  Spicer has never once indicated what document he believes exists that would have affected the outcome of the case. Numerous documents were introduced at trial that reflected Enzo Cecconi as an owner of the Pebble Beach Property, including title documents.  The Bankruptcy Court found that Sarah and Enzo's testimony regarding Sarah's intent *overcame* by clear and convincing evidence the presumption that arose from the title documents (and documents derivative of title) reflecting Enzo as an owner.  Thus, it is difficult to imagine how the outcome of the case would have changed, based on some other "unproduced" document, even if it showed Enzo as an owner of the property.

The only real effect of Sarah whiting out Enzo's name on the insurance statements was to provide Spicer with a basis on which he could urge the court to disregard Sarah's testimony on the merits of the case.  Spicer seized that opportunity and litigated the sanction issue to exhaustion, devoting a considerable portion of Spicer's post-trial briefing to that issue.  That he incurred such a substantial amount in attorneys' fees on this issue was only because Spicer and his counsel went to extremes in attempting to leverage Sarah's mistake into a judgment in their favor.

## VI.    CONCLUSION

Spicer has utterly failed to show that the Bankruptcy Court abused its discretion in making the sanction award it did, or that any of the Court's factual findings underlying that award are clearly erroneous.  For these reasons, the Order Awarding Monetary Sanctions should be affirmed.

Dated: January 28, 2008                          McPHARLIN SPRINKLES & THOMAS LLP


By:____/s/ Paul s. Avilla_____
     PAUL S. AVILLA
     Attorneys for Plaintiff SARAH CECCONI