SHARTSIS FRIESE LLP
MARY JO SHARTSIS (Bar #55194)
AMY L. HESPENHEIDE (Bar #200930)
One Maritime Plaza, 18th Floor
San Francisco, California 94111-3598
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Emails: mjshartsis@sflaw.com
        ahespenheide@sflaw.com

Attorneys for Appellant
A. C. SPICER, TRUSTEE IN BANKRUPTCY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>GIUSEPPE ENZO CECCONI,<br><br>    Debtor. | Case No. 5:07-cv-06194-JW<br><br>**APPELLANT'S REPLY BRIEF**<br><br>**(MONETARY SANCTIONS APPEAL)**<br><br>The Honorable James Ware |
| SARAH CECCONI,<br><br>    Plaintiff,<br><br>  v.<br><br>GIUSEPPE ENZO CECCONI and A. C. SPICER, TRUSTEE IN BANKRUPTCY,<br><br>    Defendants. | |
| A.C. SPICER, TRUSTEE IN BANKRUPTCY,<br><br>    Appellant,<br><br>  v.<br><br>SARAH CECCONI,<br><br>    Appellee. | |

Case No.: 5:07-cv-06194-JW
APPELLANT'S REPLY BRIEF (MONETARY SANCTIONS APPEAL)

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

    A.    An Award Of Monetary Sanctions Equal To The Attorneys' Fees And Costs Trustee Incurred In Trial Is Well Within The Bankruptcy Court's Discretion ............................................................................................... 2

    B.    Trustee Did Not Waive Any Rights By Proceeding With Trial After Sarah Cecconi's Alteration Of Documents Was Discovered ........................... 4

    C.    The Bankruptcy Court Did Not Find That Sarah Cecconi Had Searched For Documents Responsive to Trustee's Requests And Would Have Committed Clear Error Had It So Found ................................................................... 6

    D.    Counsel For Sarah Cecconi Did Not Certify That All Responsive Documents In Her Client's Possession, Custody Or Control Had Been Produced Or That All Instances Of Sarah Cecconi's Application Of Liquid White-Out Had Been Identified ................................................................... 9

    E.    Sarah Cecconi's Proffer At Trial Of Documents Responsive To Trustee's Requests That She Had Never Produced Demonstrated Both That She Never Made A Reasonable Search And That She Failed To Produce Responsive Documents ............................................................................ 9

        1.    Exhibit 172 ............................................................................... 10

        2.    Fax correspondence between Sarah Cecconi and Enzo Cecconi .............. 10

        3.    U-1 Attachments ..................................................................... 11

        4.    Exhibit DE .............................................................................. 11

    F.    The Bankruptcy Court Clearly Erred In Finding That It Could Determine What Words Originally Appeared On The Documents Sarah Cecconi Whited Out ................................................................................................... 12

III.  CONCLUSION .................................................................................................. 13

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.: 5:07-cv-06194-JW    - i -
APPELLANT'S REPLY BRIEF (MONETARY SANCTIONS APPEAL)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caldwell v. United Capital Corp. (In re Rainbow Magazine, Inc.)*,
    77 F.3d 278 (9th Cir. 1996) ................................................................................................ 2

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ............................................................................................................. 2

*Knupfer v. Lindblade* (*In re Dyer*),
    322 F.3d 1178 (9th Cir. 2003) .................................................................................... 2, 3, 4

*Qualcomm Inc. v. Broadcom Corp.*,
    2008 U.S. Dist. LEXIS 911 (January 7, 2008) .......................................................... 5, 7, 8, 9

**Rules**

Bankruptcy Local Rule
    Rule 7016-1(b) ................................................................................................................... 8

Federal Rules of Bankruptcy Procedure
    Rule 7026 ........................................................................................................................... 8

Federal Rules of Civil Procedure
    Rule 26(a)(1)(E)(viii) ......................................................................................................... 8

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## I. INTRODUCTION

Sarah Cecconi attempts to recast the issues raised by A. C. Spicer, Trustee in Bankruptcy ("Trustee") on this appeal, and in so doing misstates the Bankruptcy Court's findings in her Appellee's Brief. Contrary to Sarah Cecconi's contentions, the Bankruptcy Court *did not* make any finding that Sarah Cecconi made an appropriate search for documents responsive to Trustee's requests for production of documents. The Bankruptcy Court would have committed clear error had it so found because the undisputed evidence established that neither Sarah Cecconi, nor her secretary nor her counsel ever searched for documents responsive to Trustee's document request.

The Bankruptcy Court did find: "There is no evidence that Sarah [Cecconi] systematically reviewed documents in her possession and decided not to produce them." CR 202 (Memorandum Decision After Trial) at 38. Given the undisputed evidence at trial—particularly the evidence that Sarah Cecconi completely failed to fulfill her obligation to search for documents responsive to Trustee's document requests and the evidence that Sarah Cecconi failed to produce during discovery (and produced only at trial) several documents that were clearly responsive to Trustee's document requests—this finding was clear error. Trustee's appeal is based on this clearly erroneous factual finding by the Bankruptcy Court, along with the clearly erroneous factual finding that Sarah Cecconi's redactions on original documents "did not prevent either the Trustee or this Court from ascertaining what those documents said." *Id.* at 42.

Trustee's appeal is also based on the Bankruptcy Court's clearly erroneous factual finding that Sarah Cecconi "[had] not engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.* at 38. This finding is clear error because it is contrary to the undisputed evidence and to other findings made by the Bankruptcy Court. Likewise, the Bankruptcy Court's conclusion that Sarah Cecconi did not withhold relevant evidence, *see id.* at 43, is clear error. Trustee therefore appeals the Bankruptcy Court's decision to deny all sanctions requested by Trustee for Sarah Cecconi's failure to search for documents and to award Trustee only limited monetary sanctions. Given the undisputed evidence, the Bankruptcy Court's decision to award only very limited monetary sanctions—that decision itself based on clearly erroneous factual findings—was an abuse of discretion.

## II. ARGUMENT

### A. An Award Of Monetary Sanctions Equal To The Attorneys' Fees And Costs Trustee Incurred In Trial Is Well Within The Bankruptcy Court's Discretion.

Sarah Cecconi argues that the Bankruptcy Court would necessarily have abused its discretion had it awarded Trustee the monetary sanctions he sought—all trial costs and fees. Appellee's Brief (Monetary Sanctions Appeal) at 7-8. On the contrary, the Bankruptcy Court itself recognized that an award of monetary sanctions equivalent to the attorneys' fees Trustee incurred for the entire case, through trial, would be within its discretion.

> THE COURT: . . . First, I consider this particular issue [white-outs] extremely serious. The whole integrity of the Court process depends upon people not doing this. I think it would be within my discretion either way, having researched this— dismissal sanctions I think would be within my discretion, and the refusal to issue dismissal sanctions would be within my discretion.
>
> I am not going to dismiss her claim for a trust now. But I am going to do a couple of things. I'm going to carry the question of sanctions with the case, including the possibility that Sarah Cecconi will be ordered to pay all or a portion of the trustee's attorney's fees *from the beginning of the adversary proceeding through trial and beyond in post-trial briefing*.

TT 15:10-23 (emphasis added). Trustee did not seek monetary sanctions equal to his attorneys' fees for this entire case, as the aggrieved party sought and won in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Rather, Trustee sought only monetary sanctions equal to his attorneys' fees and costs for the trial of this action.

Federal law is clear that bankruptcy courts have inherent authority to sanction bad faith or willful misconduct, even without express statutory authority to do so. *Chambers*, 501 U.S. at 42-47; *Caldwell v. United Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). "The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." *Knupfer v. Lindblade* (*In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003).

While *Knupfer* makes clear that the Bankruptcy Court's power to sanction under its inherent authority does not authorize "significant punitive damages," *id.*, it also makes clear that an award of sanction tied to costs and attorneys' fees is compensatory in nature, not punitive. *Id.* n.21 ("*Rainbow Magazine* did not explicitly state that the [sanctions] award was compensatory.

A review of the underlying proceedings in that case, however, reveals that the sanctions award was tied to costs and attorneys' fees and was therefore compensatory."). In *Knupfer*, the bankruptcy court awarded the bankruptcy trustee $201,439.00 based on a violation of the automatic stay by a creditor in that case, the debtor's father-in-law. Of that award, $151,439.00 was based on the amount of the trustee's documented attorneys' fees and costs. The bankruptcy court then awarded the trustee an additional $50,000.00 in "punitive damages." *Id.* at 1185. On appeal, the Ninth Circuit determined that the award of punitive damages could not be sustained under the Bankruptcy court's inherent authority. It affirmed the bankruptcy court's determination that the debtor's father-in-law willfully had violated the automatic stay provision and remanded the matter to the bankruptcy court to determine the appropriate amount of "compensatory" sanctions. *Id.* at 1197-1198.

*Knupfer* establishes two points particularly relevant to the instant case. First, willful behavior (such as that exhibited by Sarah Cecconi) is a sufficient basis to uphold an award of monetary sanctions under the Bankruptcy Court's inherent authority.[1] Second, an award of monetary sanctions is compensatory and therefore does not raise questions about the scope of any punitive fines where that award is tied to costs and attorneys' fees incurred in the case. Trustee's request for an award of sanctions equivalent to the costs and attorneys' fees he incurred at trial falls well within this standard.

The Bankruptcy Court's order limited the monetary sanctions available to Trustee to those fees it determined Trustee had incurred as a specific result of Sarah Cecconi's having applied liquid white-out to obscure her husband's name on specific insurance statements and disallowed any costs. As Trustee argued in his opening brief on the monetary sanctions issue, this decision was an abuse of the Bankruptcy Court's discretion because it was based on the clearly erroneous factual findings by the Bankruptcy Court that Sarah Cecconi had reviewed and not withheld any documents and that her application of liquid white-out to original documents had not prevented

---

[1] In her Appellee's Brief, Sarah Cecconi does not challenge Trustee's argument that her discovery misconduct—both her failure to search for responsive documents and her alteration of evidence—was willful and therefore sanctionable under the Bankruptcy Court's inherent authority.

Case No.: 5:07-cv-06194-JW — - 3 -
APPELLANT'S REPLY BRIEF (MONETARY SANCTIONS APPEAL)

the Bankruptcy Court or Trustee from determining what text originally appeared on the documents. In contrast, a sanctions award based on correct factual findings would equal the costs and attorneys' fees Trustee incurred through the entire trial of this matter, because Sarah Cecconi's failure to conduct a reasonable search and her alteration of evidence—some of which could not be reconstructed—directly related to the central issues litigated through trial. *Cf. Knupfer*, 322 F.3d at 1185-86 (noting that the district court had concluded that the sanctions award overstated the amount of fees incurred by the bankruptcy trustee due to the automatic stay violation because much of those fees were incurred litigating issues unrelated to the violation). Trustee's document requests went to the heart of what was tried in this case—whether Sarah Cecconi's husband had a community property interest in the Pebble Beach Property. An award of sanctions in the full amount of the fees and costs Trustee incurred at trial is non-punitive and entirely within the Bankruptcy Court's inherent authority to award.

**B.    Trustee Did Not Waive Any Rights By Proceeding With Trial After Sarah Cecconi's Alteration Of Documents Was Discovered.**

Sarah Cecconi argues in her Appellee's Brief that by electing to proceed with trial after the Bankruptcy Court offered to allow Trustee to take further depositions in the case, Trustee and his counsel "waived any argument that Trustee was prejudiced at trial by either the redaction of documents or the adequacy of Sarah [Cecconi's] discovery requests [sic]." This argument has no merit.

The Bankruptcy Court clearly did not contemplate that Trustee would waive any argument in offering to allow Trustee to re-take Sarah Cecconi's deposition:

> We've got this mess, frankly, created by Mrs. Cecconi, which is a problem. . . . I would like, if possible, to proceed with the trial, but you have to talk now about what I should do and see if you agree on what I should do. If you want discovery, you can either do it with respect to these documents—Ms. Hespenheide, you can do it simultaneously with the trial; we could take a day off; we can schedule a day for discovery where we won't have trial. You can do it on the weekend.
>
> I need a proposal from you as to how this can proceed. I want to know if you want to go forward with the trial as set. But we have to find a mechanism. It may be that you want to depose her. If may be that you want to—you don't want to depose her; you'd rather just go forward with the trial and deal with it on cross-examination. And if you want an extra hour or two to deal with that situation, we can talk about that.

TT 23:10-24:2. Trustee elected to proceed through cross-examination of the relevant witnesses rather than through additional deposition time with Sarah Cecconi, and is entitled to rely on the facts that came out through that cross-examination and on direct.[2]

Moreover, acting for the Creditors' Committee in the involuntary bankruptcy proceeding against Enzo Cecconi in England, Trustee could not voluntarily accept what, realistically, would have been another year's delay of trial of this case. As of the first day of trial (the date that the Bankruptcy Court made the offer to allow Trustee to take additional discovery), this bankruptcy proceeding had already been pending for more than three years. CR 237 (Petition to Commence Ancillary Bankruptcy Case). Discovery had closed more than one year earlier, in January 2004. It had taken counsel an extremely long time to obtain a date for trial on the Bankruptcy Court's calendar that would accommodate the length of the expected proceeding; even once trial was underway, the case presentation occurred on intermittent days over an almost three-month period. The Cecconis had insisted the trial be set during the period when they would otherwise be in California, and they are only resident in California during five months of each year (roughly between Christmas and Easter). TT 1714:12-23; TT 1716:19-1717:4; TT 1737:88-1738:6; and Exh. BL ¶¶ 1-5. They emphatically refused to alter their travel schedule to allow for any flexibility in scheduling the trial. Re-opening discovery and delaying trial, therefore, would likely have pushed the trial into 2006.

Sarah Cecconi nonetheless contends that in electing to proceed with trial rather than re-opening discovery, Trustee cannot rely on any of the testimony actually elicited at trial—that since Trustee chose not to take additional depositions, he cannot rely on the fact that counsel for Sarah Cecconi testified under oath that she didn't bother to look through her client's documents, didn't give her any instructions as to how to proceed to select, collect and produce documents,

---

[2] Trustee had no reason to file any motion to compel discovery during the discovery phase of the case because he did not know until Sarah Cecconi, Ms. Korb and Ms. Seid testified at trial that Sarah Cecconi had utterly failed to make any search for responsive documents. *Cf. Qualcomm Inc. v. Broadcom Corp.*, 2008 U.S. Dist. LEXIS 911, *29-31 (January 7, 2008) ("Because Qualcomm agreed to produce the documents . . . Broadcom had no reason to file a motion to compel. . . . Should all parties file motions to compel to preserve their rights in case the other side hides documents?")

and didn't instruct her to preserve documents in their original form. She also argues that since Trustee chose not to take additional depositions, he cannot rely on trial testimony from Sarah Cecconi and Ms. Korb, which made brutally clear that neither of them—nor counsel—ever searched for documents in response to Trustee's requests, but instead simply produced documents they had gathered months before to support Sarah Cecconi's own case that she paid for the Property from her separate funds. Sarah Cecconi has not cited any case or procedural rule to support her contention that Trustee's decision to proceed with trial under the circumstances constituted a waiver of his rights. These arguments are refuted not only by the testimony given but by the Bankruptcy Court's clear acknowledgement and preference that the trial proceed as set.

### C. The Bankruptcy Court Did Not Find That Sarah Cecconi Had Searched For Documents Responsive to Trustee's Requests And Would Have Committed Clear Error Had It So Found.

Sarah Cecconi's Appellee's Brief entirely fails to address the undisputed fact that neither she nor anyone working for her ever searched for documents responsive to Trustee's document requests. The evidence established unequivocally that neither Sarah Cecconi nor her counsel ever searched for responsive documents. Instead, Sarah Cecconi (or her counsel, Ms. Seid) directed Sarah Cecconi's secretary, Ms. Korb, to select documents to support her own case months before Trustee served his document request. Her brief in the main appeal claims counsel relied on Ms. Korb, but as Trustee established at trial, the evidence is clear that Ms. Korb never saw Trustee's document request. She therefore could not possibly have searched for documents falling into the categories sought by Trustee. *See generally* Appellant's Brief (Monetary Sanctions Issue) at 6-7. Sarah Cecconi testified herself clearly and unequivocally that she never searched for documents in connection with Trustee's request. TT 1668:12-1669:3. *See also* Appellant's Brief (Monetary Sanctions Issue) at 5-7. Finally, counsel for Sarah Cecconi never searched for documents and never reviewed the documents Carla Korb had selected for the purposes of this case. TT 2260:16-2261:8; TT 2263:14-2264:14: 2265:5-11; and 2313:3-7. *See also* TT 1669:4-1670:18 (colloquy including comments from the Bankruptcy Court). *See generally* Appellant's Brief (Monetary Sanctions Issue) at 7-8.

Ignoring this undisputed evidence, Sarah Cecconi argues instead that the number of

Case No.: 5:07-cv-06194-JW     - 6 -
APPELLANT'S REPLY BRIEF (MONETARY SANCTIONS APPEAL)

documents she produced is evidence that she did not withhold documents. *See* Appellee's Brief at 13 *and* 15. She fails to explain how the number of documents she produced has any relevance since she clearly testified that she never saw Trustee's document request or searched for any documents that Trustee requested. All of the 2000-plus pages Sarah Cecconi produced were documents she (or Ms. Seid) had directed Ms. Korb to pull from Sarah Cecconi's files to support her side of the case. There is simply no evidentiary support for the claim that Sarah Cecconi produced all responsive documents requested by Trustee, and Sarah Cecconi cites none. *Cf. Qualcomm Inc. v. Broadcom Corp.*, 2008 U.S. Dist. LEXIS 911, *31 (January 7, 2008) ("Producing 1.2 million pages of marginally relevant documents while hiding 46,000 critically important ones does not constitute good faith and does not satisfy either the client's or [the] attorney's discovery obligations.").

Sarah Cecconi also argues that her only misconduct was alteration of documents "in a single instance, in a careless act of frustration . . . that did not prejudice Trustee . . . ." Appellee's Brief at 7. In fact, the Bankruptcy Court itself found: "Neither Ms. Korb nor Sarah had a copy of [Trustee's] Document Request at hand while searching through the documents. Sarah's counsel did not personally search through Sarah's files from Mr. Coleman's office." CR 202 (Memorandum Decision After Trial) at 32:17-23. Of course, as noted above, the undisputed evidence at trial went even further. Neither Ms. Korb nor Sarah Cecconi ever saw a copy of Trustee's document request, and counsel for Sarah Cecconi never searched for or reviewed ***any*** documents on her behalf or told them what to look for. The supposed "single instance," moreover, occurred well after Sarah Cecconi had already applied white-out to her checks and other documents delivered in her first production. It was a "second instance" later when Sarah Cecconi was specifically asked to produce insurance documents and did so only after whiting out her husband's name because he was identified as a homeowner of the Property.

The evidence established that Ms. Korb gathered documents for Sarah Cecconi before Trustee served his document requests (TT 1562:13-18; TT 1668:12-24; and Exh. DG), and Sarah Cecconi thereafter produced those same documents after Trustee served his document request

Case No.: 5:07-cv-06194-JW    - 7 -
APPELLANT'S REPLY BRIEF (MONETARY SANCTIONS APPEAL)

(Exh. DG). *See* Exhs. DK and DL.[3] In short, the documents produced were limited to the same documents that supported Sarah Cecconi's own case, yet Sarah Cecconi's written response to Trustee's document requests and counsel's cover letters represented that the documents produced were the result of a reasonable search for the documents requested by Trustee as required by Bankruptcy Rule 7034 and Federal Rule of Civil Procedure 34. *See* Exhs. DH; DK ("Enclosed herewith please find the first group of documents responsive to your First Request for Production of Documents . . . .") and DL ("Enclosed herewith please find the balance of the documents Ms. Cecconi has located in her possession that would be responsive to your First Request for Production of Documents . . . ."). It was not until trial and the cross-examination of Sarah Cecconi and Ms. Seid that Trustee learned that Sarah Cecconi had made no search whatsoever in connection with his requests and that the documents she produced were simply the documents she had collected to support her own case. This was both discovery misconduct in and of itself and evidence that Sarah Cecconi withheld documents. *See Qualcomm*, *supra*, at *33-35 (internal citations omitted). As the court stated in *Qualcomm*:

> Despite the fact that [Qualcomm] maintains detailed records showing whose computers were searched and which search terms were used . . . Qualcomm has not presented any evidence establishing that it searched for pre-September 2003 JVT, avc_ce, or H.264 records or emails on its computer system or email databases. Qualcomm also has not established that it searched the computers or email databases of the individuals who testified on Qualcomm's behalf at trial or in depositions as Qualcomm's most knowledgeable corporate witnesses; in fact, it indicates that it did not conduct any such search. The fact that Qualcomm did not perform these basic searches at any time before the completion of trial indicates that Qualcomm intentionally withheld the documents.

*Id*. Sarah Cecconi and her counsel stressed repeatedly at trial and in post-trial briefing that Ms. Korb kept meticulous and detailed records concerning the acquisition, financing and development of the Pebble Beach Property. *See* TT 390:8-391:21; TT 398:14-401:17; Exhs. 54-71; and CR 174 (Joint Post-Trial Brief) at 10:8-11. Yet neither Sarah Cecconi nor Ms. Korb made any search of those records for responsive documents, and Sarah Cecconi

---

[3] Under the procedural rules applicable to this adversary proceeding, none of the parties were required to make initial disclosures in this case. Fed. R. Bankr. P. 7026; Fed. R. Civ. P. 26(a)(1)(E)(viii). *See also* Bankruptcy Local Rule 7016-1(b).

produced virtually no correspondence from her father relating to the Property. As in *Qualcomm*, her failure to conduct a search indicates that she "intentionally withheld the documents." *Id.*

### D. Counsel For Sarah Cecconi Did Not Certify That All Responsive Documents In Her Client's Possession, Custody Or Control Had Been Produced Or That All Instances Of Sarah Cecconi's Application Of Liquid White-Out Had Been Identified.

Responding to the point made in Appellant's Brief (Monetary Sanctions Issue) that Sarah Cecconi's counsel had failed to make the certification requested by Trustee after Sarah Cecconi's alteration of evidence was discovered, Sarah Cecconi argues that that certification was given "in the form of sworn live testimony during the trial." Appellee's Brief at 14. On the contrary, the sworn testimony established just the opposite. Having taken the stand to support or rehabilitate her own client's testimony, Ms. Seid testified that she could not state whether all responsive documents in her client's possession, custody or control had been produced. TT 2310:8-11. She further testified that she could not state whether all redactions by her client had been identified. TT 2312:14-2313:7. In short, no one responded to Trustee's request for certification prior to trial, and Ms. Seid's testimony firmly established that she could not and did not make any such certification. Here, as in *Qualcomm*, neither she nor her trial counsel made any effort to rectify that situation during trial, even after the Bankruptcy Court found their handling of discovery "irresponsible." TT 1669:4-1670:18.

### E. Sarah Cecconi's Proffer At Trial Of Documents Responsive To Trustee's Requests That She Had Never Produced Demonstrated Both That She Never Made A Reasonable Search And That She Failed To Produce Responsive Documents.

That Sarah Cecconi withheld documents is evident from the testimony described above that she made no search for correspondence from her father concerning the Property. In his opening brief on the issue of monetary sanctions, Trustee described multiple documents that Sarah Cecconi either withheld until trial or failed entirely to produce. Sarah Cecconi argues in response that Trustee has not identified the requests to which these documents would have been responsive, and argues that in any case, her failure to produce these documents is not evidence that she withheld documents. Appellee's Brief (Monetary Sanctions Issue) at 14-15. Trustee

addresses each item below in turn.

### 1. Exhibit 172.

The Bankruptcy Court specifically stated at trial that the single letter Sarah Cecconi produced that she wrote to her father (Exh. 171) —the letter she wrote in response to his suggestion that she sell the Pebble Beach Property—was responsive to at least one of Trustee's document requests. TT 1659:5-11 and TT 1660:7-11 ("Well, this talks about a proposed sale. It's certainly responsive in my opinion."). Exhibit 172, the letter in which Sarah Cecconi's father suggested that she sell the Property, was therefore also responsive and should have been produced in discovery. At minimum, Exhibit 172 was responsive to Document Requests No. 1 ("All DOCUMENTS REFERRING OR RELATING TO the purchase, sale or transfer of the PEBBLE BEACH PROPERTY . . . .") and No. 16 ("All DOCUMENTS REFERRING OR RELATING TO YOUR legal, equitable or beneficial interest in the PEBBLE BEACH PROPERTY."). Exh. DG. The fact that Sarah Cecconi withheld this document in discovery is strong evidence that she withheld other responsive documents. She specifically testified that her father frequently wrote her letters while he was managing her financial affairs, including arranging all the financing for the acquisition and development of the Property, obtaining the building and development permits and arranging multiple mortgages. TT 1698:7-19. There is no other explanation for her failure to produce other correspondence from her father relating to the purchase, sale or transfer of the Pebble Beach Property (Document Request No. 1), the mortgages on the Property (Document Request No. 4), her use of the Property (Document Request No. 14) or her interest in the Property (Document Request No. 16).

### 2. Fax correspondence between Sarah Cecconi and Enzo Cecconi.

Sarah Cecconi agrees that Enzo Cecconi testified that he and she sent documents referencing the Pebble Beach Property to one another by facsimile. Appellee's Brief (Monetary Sanctions Issue) at 14. If these documents referenced the Pebble Beach Property and/or required either Enzo Cecconi's signature or Sarah Cecconi's signature or both of their signatures, they necessarily fell within the scope of Document Request No. 16 (quoted above) or Document Request No. 14 ("All DOCUMENTS REFERRING OR RELATING TO YOUR use of the

PEBBLE BEACH PROPERTY"). Exh. DG. Correspondence between the two spouses (where either or both were asked to execute documents) also fell within the scope of other document requests from Trustee, such as Document Request No. 2 (seeking documents referring or relating to the Cecconi Residential Trust) or Document Request No. 7 (seeking, *inter alia*, documents referring or relating to any contract Sarah Cecconi entered into for the purchase of the Property or construction on the Property). *Id.*

### 3.   U-1 Attachments.

Sarah Cecconi argues that that it was "remarkable" that she was able to locate and produce the "breadth and number of documents" she produced in this case and suggests that the missing categories of records Trustee has identified from within that production are "not evidence of improper conduct." Appellee's Brief at 15. Pages were missing from many of the documents Sarah Cecconi produced that she considered helpful to her case. The loans obtained to purchase and develop the Property were arranged for Sarah Cecconi by her father and Ms. Korb. *See* TT 412:2-23; TT 501:11-508:6; and TT 689:10-19. Ms. Korb was apparently a thorough recordkeeper, and she testified that in February 1998 she sent all Sarah Cecconi's records to Sarah Cecconi at the Pebble Beach Property. TT 865:12-22; *see also* TT 1701:24-1702:15 (Sarah Cecconi's testimony to the same effect). The fact that Sarah Cecconi could put her hands on everything she wanted ***except*** several pages that required her to state the purpose of the loans identified, or enclosures Ms. Korb had identified as letters from the lending bank to both Sarah and Enzo Cecconi, is also evidence that she withheld these documents deliberately.[4]

### 4.   Exhibit DE.

Exhibit DE is dated 8 June 1988 (after the purchase of the unimproved Pebble Beach Property) and specifically states:

> G E and Mrs S C Cecconi: Additional borrowing facility of £100,000 in respect of the California property resulting in a total requirement of £250,000. The loan will

---

[4] The missing records were all responsive to Trustee's Document Request No. 1: "All DOCUMENTS REFERRING OR RELATING TO the purchase, sale or transfer of the PEBBLE BEACH PROPERTY or any beneficial interest in the PEBBLE BEACH PROPERTY." Sarah Cecconi financed the purchase of the PEBBLE BEACH PROPERTY through these loans arranged by her father and Ms. Korb.

be repayable over 6 years by monthly installments of £3,500.

This document states on its face that the borrowing facility in question—a loan—was related to the California property requested by Enzo Cecconi. While Sarah Cecconi claims in her brief that The Royal Bank of Scotland "was never involved in any way in any financing regarding the Pebble Beach Property," her argument is refuted by the unchallenged evidence produced by Trustee that demonstrated that The Royal Bank of Scotland lent $300,000.00 to Enzo Cecconi at his request so that he could contribute toward the costs of the Pebble Beach Property. Exhs. AC at RBS0269 and RBS0272; Exh. AH at RBS0268 and RBS0269; and TT 349:19-350:25. Whether or not these funds were used for that purpose, however, the document was responsive to Document Requests Nos. 14 and 16, quoted above, and should have been produced. Again, at the very minimum, the other 22-plus pages of this fax are missing and have been identified by Trustee as potentially responsive, given that the single page that Sarah Cecconi's personal counsel used in depositions in this case expressly refers to the Property. Nonetheless, those pages were never produced by Sarah Cecconi before or during trial.

### F. The Bankruptcy Court Clearly Erred In Finding That It Could Determine What Words Originally Appeared On The Documents Sarah Cecconi Whited Out.

The Bankruptcy Court inexplicably found that it and Trustee could determine what text had originally appeared beneath Sarah Cecconi's white-outs despite the fact that it is physically impossible to do so. Review of the trial exhibits that had white-outs shows that Sarah Cecconi applied liquid white-out so thickly on many that it is impossible to read what originally appeared underneath the white-out. Exhs. 88; 102 at 63 and 64; 103 at 59-61; 104 at 38, 49 and 50; 106 at 67, 69 and 95; 108 at 90 ff.; and 109 at 92 and 103. The only one that could know what words originally appeared on these documents was Sarah Cecconi, and she did not testify or know what the original text was that she whited out. The Bankruptcy Court could not determine what the original documents said because there was no evidence, only pure speculation.

While Sarah Cecconi's attorneys had her testify on direct examination that she had whited out certain information for "privacy" reasons, TT 1562:19-1563:25, the fact is that she couldn't remember or refused to identify everything to which she had applied liquid white-out,

TT 2084:21-2085:3. Sarah Cecconi also had a very idiosyncratic view of what constituted her "private" information. She whited out her mother's name from financial records, her mother's address, her own birth date, her P.O. Box (shared with her husband and stamped on publicly-filed documents), her driver's license number and checking account numbers (including one account that was shared with her husband). *See* TT 1570:8-1571:10; and Exhs. H, 9 and 10; *see generally* Exh. DW. Her redactions of so-called "private" information went far beyond what she testified that she redacted. She testified that for "privacy" reasons she had used white-out to hide her social security number, her telephone number and her Wells Fargo private bank account number. TT 1562:23-1563:1. Her attorneys provided no supervision of her redactions whatsoever and did not review the redacted documents Sarah Cecconi gave them before they Bates-numbered and produced the documents. TT 2293:7-16; TT 2260:16-2261:8; TT 2263:14-2264:14; TT 2282:1-7; and TT 2312:14-2313:7. Sarah Cecconi, in fact, thought it was absolutely fine to white-out whatever she felt should be redacted. TT 1567:7-12.

Of course, Sarah Cecconi also redacted her husband's name where it appeared identifying him as an owner of the Pebble Beach Property or an insured on homeowners' insurance statements. Exh. 88; Exh. DP; and TT 1930:6-24. Enzo Cecconi's name or other information relevant to this case could very well have been information Sarah Cecconi considered "private" and therefore obliterated with liquid white-out. *See* TT 2293:3-6. We simply don't know what information was whited out, and Sarah Cecconi was unable or unwilling to give any evidence on this point. It was clear error for the Bankruptcy Court to find that both Trustee and the Bankruptcy Court could discern all information redacted by Sarah Cecconi when they clearly cannot.

### III. CONCLUSION

The Bankruptcy Court's decision to award only very limited monetary sanctions was an abuse of discretion because it was based on two clearly erroneous factual findings—that there was no evidence that Sarah Cecconi had withheld responsive documents and that both the Bankruptcy Court and Trustee could determine all the original text Sarah Cecconi had obliterated with liquid white-out. Its conclusion that Sarah Cecconi had not engaged in conduct utterly

inconsistent with the orderly administration of justice is based on these clearly erroneous findings. Its findings and conclusion constitute clear error. Taken together, Sarah Cecconi's failure to comply with basic discovery obligations and her blatant alteration of evidence in this case constitute a pattern of severe discovery abuse. That abuse prejudiced Trustee in his defense against Sarah Cecconi's claims, and, at minimum, warrants an award of monetary sanctions equivalent to the attorneys' fees and costs Trustee incurred at trial.

DATED: February 11, 2008

Respectfully submitted,
SHARTSIS FRIESE LLP

By: */s/ Amy L. Hespenheide*
AMY L. HESPENHEIDE

Attorneys for Appellant
A.C. SPICER, TRUSTEE IN BANKRUPTCY

6043\002\AHESPENHEIDE\1488059.6